### TEXAS PACIFIC RAILWAY COMPANY v. E. S. OVERHEISER.

#### No. 2773.

1. **Liability of Railway while Controlled by Receiver.**—Case of Johnson v. Railway, *supra*, page 421, adhered to—holding that a claim for personal injuries caused by the negligent operating of the railway while in hands of receiver may be prosecuted in the State courts against the railway company, and the judgment enforced against the property when it is shown that the current assets of the road were applied in permanent improvements upon the road, and the property had been returned without sale to the owner.

2. **Charge.**—The trial judge after charging fully upon the issues made by the pleadings and evidence, should refuse to repeat such charge or charges at request of either party.

3. **Verdict.**—See facts held to sustain a verdict for $7500 for personal injuries against a railway company.

4. **Negligence.**— See facts held sufficient to sustain a verdict for damages for plaintiff for personal injuries, the testimony justifying a verdict that due care was taken by the plaintiff when injured.

APPEAL from Marion.   Tried below before Hon. John L. Sheppard. The opinion states the case.

*F. H. Prendergast,* for appellant.

*C. A. Culberson,* for appellee.

STAYTON, CHIEF JUSTICE.—E. S. Overheiser sued Brown and Sheldon, as receivers of the Texas Pacific Railway Company, on July 20, 1887, alleging he was hurt October 30, 1886, by the negligence of the receivers.   The receiver was discharged October 31, 1888, and plaintiff made the Texas Pacific Railway Company a defendant on June 8, 1889. Judgment for plaintiff for $7500 against the Texas Pacific Railway Company.   The Texas Pacific Railway Company appealed.

Pending litigation, Sheldon withdrew from the receivership, but it was continued with John C. Brown as sole receiver.

The same petitions and orders for the discharge of the receiver appear in this case which appeared in the case of appellant against Johnson, this day decided; but the facts tending to showing that receivers were appointed at the suggestion of the company do not appear.

The deposition of John C. Brown was taken on January 15, 1889, when it appeared that he was in charge of appellant's property as the president of the company. From his evidence it was shown that the net earnings of the road while in the hands of receiver amounted to more than $2,300,-000, all of which was expended for permanent improvements under the order of the Circuit Court for the Eastern District of Louisiana, sitting in New Orleans.

A statement somewhat in detail is given of the bad condition of the road when receivers were appointed, and of its good condition when returned to the company, much more than the net earnings having been thus expended; new rails and cross ties were put in, which cost over $2,-300,000.

The Texas Pacific Railway Company pleaded under oath that the receiver had control of the road when plaintiff was injured; that the receiver had been discharged and delivered all the property in his hands to the Texas Pacific Railway Company under the order of the court, charged only with such judgments as may be rendered in favor of persons who intervened in the cause where the receiver was appointed prior to February 1, 1889, and that the plaintiff had not intervened in said cause at all.

Demurrer was sustained to this plea, and this ruling is assigned as error.

The other assignments raising the questions first presented are:

"The court erred in refusing special charge No. 2 asked by the defendant, to the effect that the jury should find for defendant, because it appeared from the undisputed evidence that at the time plaintiff was injured the Texas Pacific Railway was in the hands of a receiver, and said receiver had been discharged and the property delivered to the defendant, charged with the payment only of judgments in favor of persons who intervened in that court."

"The court erred in charging the jury to find against the Texas Pacific Railway Company if they find that the betterments placed on the road by Brown, receiver, was of greater value than the amount of their verdict, because such facts do not show a liability on the part of the Texas Pacific Railway Company under the order discharging such receiver." ·

"The court erred in holding that the Texas Pacific Railway would be liable at the suit of plaintiff in this court, when the evidence showed that they received the property charged only with the payment of judgments in favor of persons who intervene in the court where the receiver was appointed prior to February 1, 1889."

The questions raised by these several assignments were considered in the case of Texas Pacific Railway Company v. Johnson, this day decided, in which it was held that the rulings complained of were not erroneous, and it becomes unnecessary again to further discuss them.

Appellee was a brakeman in the service of the receiver, and injured

while in the act of leaving the track after having gone between two cars for the purpose of uncoupling them. His theory of the case was that he attempted, in the only mode in which it could be done, to uncouple the cars; that he went in between the tender and car to uncouple them, but found the pin fastened, when "I signaled the engineer to give me the slack, and the train kept moving slightly. I walked along ten or twelve feet between the cars as they moved, and when I pulled the pin and went to step out my left pant leg was caught by something, and to save myself I threw my body outside the track, and the wheel ran over my left foot."

The court had instructed the jury that appellee was not entitled to recover if his own failure to use care contributed to the injury; and under this state of facts the court did not err in refusing practically to repeat the charge when requested by appellant in a form, looking to the evidence in the case, not as appropriate as was the charge given.

The next assignment of error is that "the court erred in refusing special charge No. 5 asked by defendant, to the effect that if plaintiff was negligent in walking along between the cars while they were moving over a road bed that he knew was not filled in between the ties, and that such negligence contributed to his injury, then plaintiff can not recover."

There was some evidence to the effect that the space between the ties from end to end was not entirely filled with earth, but it all tended to show that the space between the rails was, and there was no claim or evidence sufficient to raise claim that appellee was injured because the filling between the ties was not complete. His whole case rested upon the proposition that he was caught while leaving the track either by a brake beam claimed to have been defective, or by what is termed a "sliver" on the rail, which witnesses describe as a thin piece of the rail of some length split from it from wear, but still attached at one end.

There was evidence that such a piece of iron was found in his pants where torn and on the lower part of the leg.

The charge was not strictly applicable to the case, but had it been, the court had already informed the jury that the plaintiff could not recover if his negligence contributed to the injury.

In addition to that, at request of counsel for appellant the court gave the following instructions: "It is the duty of a railway company to furnish a safe road bed and iron rails; and if the road bed or rails were not safe and suitable when plaintiff was hurt, and their defective condition caused plaintiff's injury, then he can recover unless you find that he knew or by ordinary diligence could have learned of the condition of the road bed and rails; and if he knew or could have known by ordinary care of the condition of the road bed and iron rails, then he can not recover for any injury caused by such defects." "The jury are charged that if the plaintiff was negligent in uncoupling said car, and said negligence con-

tributed to or caused the injury to him, then he can not recover, although the receiver may have been negligent also in not keeping a safe road bed and iron."

In view of the instructions given, the court with propriety could have refused to give further charges on the question of negligence, even if such as were requested had been strictly correct and applicable to the case; and ought to have refused the charge first above quoted.

It is urged that the court erred in not granting a new trial on the ground that the verdict was excessive, and on the further grounds that appellee knew of the condition of the road bed when he went between the cars, and was negligent in going between them while moving.

The evidence of appellee as to the extent of his injuries is as follows, after stating that the wheel of the tender cut off his left foot crossway from the instep to the heel: "I suffered intense pain from the injury for eight months, and still suffer from it. After I was hurt I was sent to Texarkana, a distance of five miles, where my foot was amputated by Dr. De Loach, the railroad surgeon. That night I was sent to the company's hospital at Marshall, and remained there eight months under the care of the physicians. After I was able to leave the hospital I went to New Orleans to secure an artificial limb, for which I paid $75. This did not last long, and I got another one from St. Louis, for which I paid $60. These wooden feet, which are strapped and laced to the leg, hurt me in walking. I am not using it now, because in spring and summer it hurts me and chafes the foot. With this exception I usually wear the wooden foot. My foot is not yet well. There is nothing left but the stub of the heel. Two operations were performed upon it by the surgeons of the company." The plaintiff then exhibited the naked foot and leg to the court and jury. The leg was scarred and shriveled nearly to the knee. All the foot was gone except the rear part of the heel, and it showed signs of not being entirely healed up.

For such an injury we can not hold that the verdict was excessive.

The facts bearing on question of negligence of appellee in going between the cars was that of appellee, who, after stating what his efforts were to uncouple the cars without going between them, and that in this he had failed, stated that he "followed the rules."

"I tried to uncouple in that position, but found that the coupling pin was fast in the draw head. In such cases we must go in between the cars, and the rules so say. I signaled the engineer to stop the train so I could go in between the tender and the car to uncouple, and he stopped. I went in between the cars and began to jar the pin. I asked him to give me the slack, and the train kept moving slightly, and as it moved I walked along on the track, trying to get out the pin."

He then stated that after uncoupling the cars he started to leave the

track, when his leg was caught, and to save himself he threw his body beyond the track, when the cars ran over the foot of the leg caught.

This evidence does not show that he went between the cars while in motion, but in connection with other evidence shows that slack was called for to enable him to uncouple the cars, which were on a grade, and that they moved slowly for a short distance while he was engaged in uncoupling.

The jury found that he was not negligent in these matters, the court below approved their finding when its correctness was questioned on motion for new trial, and this court on the evidence would not be justified in setting the finding aside.

He was not familiar with the side track on which the accident occurred; had not been at that place before; knew not the condition of the rails nor brake beam, but when he went on the side track saw that the space between ties for their entire length was not filled with earth.

Under these facts we can not say that he was negligent, even if the injury had resulted from the fact that the space between the ties was not entirely filled.

The court under the evidence might properly have withdrawn from the jury any question as to whether appellee was injured in consequence of defect last named, for the evidence would not, perhaps, have sustained a finding to that effect; but there is no reason to believe that the jury were in any respect misled by the manner in which the cause was submitted to them.

The evidence in some respects was somewhat circumstantial, but we can not say that it was not sufficient to sustain the verdict, and the judgment will be affirmed.

*Affirmed.*

Delivered March 7, 1890.