## KNEELAND *v.* BASS FOUNDRY AND MACHINE WORKS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 334. Submitted April 22, 1891. — Decided May 25, 1891.

Necessary supplies purchased on credit by the receiver of a railroad, appointed in foreclosure proceedings, if not paid out of net earnings before the sale, are a charge upon the fund realized from the foreclosure sale; and where the railroad managed by the receiver consists of two or more divisions, which are sold separately and at different times to different purchasers, it will be presumed, in the absence of evidence to the contrary, that the court below has correctly distributed such charges among the different divisions to which they properly belong.

THE case is stated in the opinion.

*Mr. John M. Butler* for appellant.

*Mr. Robert C. Bell* for appellee.

·MR. JUSTICE LAMAR delivered the opinion of the court.

This case, like that of *Kneeland* v. *Lawrence, ante,* 209, grows out of litigation respecting the foreclosure of the mortgage of the Central Trust Company of New York upon the Toledo, Cincinnati and St. Louis Railroad.

The appellee herein, the Bass Foundry and Machine Works, is an Indiana corporation, having its place of business at Fort Wayne, in that State. It was an intervenor in the foreclosure suit brought by the trust company against the railroad company, and, as such, filed several petitions setting up claims to the fund arising from the sale of the road, by reason of having furnished various supplies, (particularly set out in itemized statements accompany its petitions,) to the receivers who operated the road pending the foreclosure litigation, and also to the road prior to the appointment of a receiver. The claim here in dispute is for supplies furnished the receivers, as aforesaid. There is no dispute but that the supplies were received and that they were necessary for the continued operation of the road.

The petition and claim were referred to William P. Fishback, a master of the court, who, on the 12th of March, 1886, reported that there was due the appellee, for supplies furnished the receivers, the sum of $8009.22. The appellant filed exceptions to this report, but they were overruled by the court, and on the 20th of November, 1886, a decree was entered confirming the report. This decree, among other things, provided as follows:

" It is therefore considered that there be allowed said Bass Foundry and Machine Works the said $8009.22, so found due for supplies furnished said receivers, and that Noble C. Butler, clerk of this court, be, and he is hereby, authorized and directed to pay the same to said Bass Foundry and Machine Works out of any funds in the registry of the court in said cause.".

It is from this decree that the present appeal is prosecuted.

The entire time covered by the receiverships extended from October 1, 1883, to April 18, 1885. In making up his statement of the account of the appellee with the receivers the

master divided that time into three periods. Those periods, together with the amounts of the supplies furnished in each, and the respective credits, are as follows:

"Amount furnished from Oct. 1, 1883, to Dec. 1, 1883 (1st period) . . . . . . $1,695 01
"Amount furnished from Dec. 1, 1883, to Aug. 1, 1884 (2d period) . . . . . 10,085 76
"Amount furnished from Aug. 1, 1884, to April 18, 1885 (3d period) . . . . . . 1,085 14
$12,865 91

"Credits during 1st period . . None.
"       "       2d   "   . . $2,291 63
"       "       3d   "   .. . 2,565 06
4,856 69

"Balance due . . . . . . $8,009 22"

As explained by counsel for both parties, the first period represents the time when one Dwight was receiver for the entire system of roads in Ohio, Indiana and Illinois, he having been appointed by the Circuit Court of the United States for the District of Indiana, at the suit of a judgment creditor; the second period represents the time when one Craig was the receiver of the entire systems of roads, he having been appointed by the Circuit Court of the United States for the Southern District of Ohio, at the suit of the trustees of the bondholders; and the third period represents the time when Craig was receiver of the main line of the road extending from Toledo, Ohio, to East St. Louis, Illinois, after the other Ohio divisions of the road had been sold on foreclosure decrees and delivered to the purchasers.

The main line of the road, extending from Toledo, Ohio, to East St. Louis, Illinois, was sold to the appellant herein, Sylvester H. Kneeland, on the 30th of December, 1885, and the sale was afterwards confirmed. The Ohio divisions of the road were sold to other persons.

The objection urged to the item of $1695.01, which was for supplies furnished to the receiver Dwight, is, that Dwight

was not the receiver for the bondholders and Kneeland, but was appointed receiver at the suit of a judgment creditor; that, so far as Kneeland and the bondholders are concerned, the situation was precisely the same as if the company had remained in possession of the road up to the expiration of Dwight's receivership, December 1, 1883; and that, therefore, that item should not be entitled to a preferred lien over the claims of the bondholders. *Kneeland* v. *American Loan & Trust Co.*, 136 U. S. 89, and *S. C.* 138 U. S. 509, are relied upon as authority to sustain that contention. We do not think, however, that that case will bear any such construction. The claim in that case was for rental of rolling stock used by the road during the period of the receivership, under a contract of purchase made by the company with the owner thereof prior to the receivership. The rental was not paid, and the lessor took possession of his rolling stock. As respects the claim for rental during the period of the receivership at the suit of a judgment creditor, it was held, that it was not entitled to priority of lien over the mortgage creditors, on the foreclosure and sale of the road. In other words, it was held that the bondholders, represented by the appellant, the beneficial owners of the property, could not be held liable for rental value during the time the receivership was at the instance of a judgment creditor. The theory of that ruling was, that, as the earnings of the road did not pay the operating expenses, and as the lessor of the rolling stock had a lien on only that personal property of the road, and was not chargeable with a *pro rata* share of such deficiency, he should be content with the return of his property. For, as was said by Mr. Justice Brewer, "when the court, in the administration of the receivership, thereafter returns the personalty to the holder of the liens upon it, such lien holder must be content to be relieved from any burden for a *pro rata* share of the deficiency, and has no equity to claim that he shall be not only thus relieved, but that he may also charge upon the realty, to the detriment of the lien holder thereon, both the entire burden of the deficiency and compensation to him for the use of his property." 136 U. S. 100.

The general rule with respect to supplies furnished which went into the *còrpus* of the property covered by the mortgage, and thus served to increase the fund arising from the mortgage sale, was thus stated in the opinion in that case: "A court which appoints a receiver acquires, by virtue of that appointment, certain rights and assumes certain obligations, and the expenses which the court creates in discharge of those obligations are burdens necessarily on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. So if, at the instance of any party rightfully entitled thereto, a court should appoint a receiver of property, the same being railroad property, and therefore under an obligation to the public of continued operation, it, in the administration of such receivership, might rightfully contract debts necessary for the operation of the road, either for labor, supplies or rentals, and make such expenses a prior lien on the property itself." 136 U. S. 98.

As respects the supplies furnished the road in this case during the period of Dwight's receivership, the court below, in the exercise of its undoubted authority, ordered them paid out of the fund arising from the sale of the road, because, so far as the record shows, that was the only fund available; and they had been necessary to the continued operation of the road, and had gone into the general property covered by the mortgage which was sold at the foreclosure sale. They contributed to the preservation of the property during the receivership, and went towards swelling the fund arising from the sale on foreclosure. Under such circumstances the court appointing the receiver was justified, under the rule laid down in *Kneeland* v. *American Loan & Trust Company, supra,* in preferring such claim to the claims of bondholders whose property they assisted in preserving.

It was held in *Fosdick* v. *Schall,* 99 U. S. 235, 253, 254, that where a receiver has been appointed pending foreclosure proceedings by mortgage bondholders, the court in its discretion may apply the net income to the payment of the claims of employés and supply men, who, before the receiver was ap-

pointed, furnished labor and materials required in the operation of the road, "not because the creditors to whom such debts are due have in law a lien upon the mortgaged property or the income, but because, in a sense, the officers of the company are trustees of the earnings for the benefit of the different classes of creditors and the stockholders; and if they give to one class of creditors that which properly belongs to another, the court may, upon an adjustment of the accounts, so use the income which comes into its own hands as, if practicable, to restore the parties to their original equitable rights." And it was further remarked that "while, ordinarily, this power is confined to the appropriation of the income of the receivership and the proceeds of moneyed assets that have been taken from the company, cases may arise where equity will require the use of the proceeds of the sale of the mortgaged property in the same way."

In *Miltenberger* v. *Logansport Railway*, 106 U. S. 286, it was held that a court has the power to create claims through a receiver, in a suit for the foreclosure of a railroad mortgage, which shall take precedence of the lien of the mortgage; and that it may provide for the payment of arrears due for operating expenses incurred before the receiver was appointed, and make such expenditures a lien prior to the lien of the mortgage.

In *Union Trust Co.* v. *Souther*, 107 U. S. 591, the same rule was upheld, and a claim for supplies furnished before the receiver was appointed was ordered paid out of the fund arising from the sale of the road, before the mortgage bondholders were paid, that fund not being sufficient to satisfy all demands. See also *Wallace* v. *Loomis*, 97 U. S. 146, 163; and *Burnham* v. *Bowen*, 111 U. S. 776.

These authorities justify us in allowing the item in dispute.

Another objection to the claim herein is, that, even admitting that it should be paid out of the fund arising from the sale of the road, it should not be entitled to payment out of the fund arising from the sale of the main line of the road alone, but should be distributed ratably among the several divisions of the entire system of roads, according to a basis

adopted by Special Master J. D. Cox, in 1884, with respect to the general liabilities of the entire system of roads under the control of the several receivers.

It is quite true that the several receivers had control of and operated the entire system of roads, and that these supplies were furnished them while they were thus in control of the roads; but there is nothing in the record going to show specifically by what division of the road these supplies were used. Indeed, if any presumptions are to be indulged, it may justly be presumed that they were all used on the main line of the road from Toledo to East St. Louis.  For the court below, being familiar with the basis of distribution of liabilities before referred to, and it not appearing anywhere in the record that they were not used on that division of the road, it must, of necessity, be presumed that the order made by the court, that they be paid for out of this fund, was in accordance with the law and the facts of the case.  The evidence upon which the master made his report and the court made its order is not before us, and, in the absence of anything showing that the allowance was improperly made a lien upon the fund, we must conclude that the court below committed no error in the matter.

These remarks also dispose of the third point of the appellant, viz., that, as the main line of the road — that purchased by Kneeland — was the only part of the system in the hands of the receiver after August 1, 1884, it should be entitled to credit for all payments made to the appellee by the receiver after that date.  In other words, the contention is, that as, according to the master's report, the supplies furnished after August 1, 1884, amounted to only $1085.14, and the credits for that period amounted to $2565.06, the difference between those amounts, to wit, $1479.92, ought to be applied as a credit upon that portion of the appellee's claim which accrued between December 1, 1883, and August 1, 1884, (the period of the Craig receivership,) upon the aforesaid basis of distribution of liabilities.

This contention, like the preceding one, assumes that the supplies, which were furnished by the appellee, were used

indiscriminately upon all of the divisions of the roads. But, as already stated, there is nothing in the record showing such to have been the case, or that the Kneeland divisions of the road did not receive all of them. Such being the case, the presumption is, that the master, having all of the facts before him, made a proper award in the premises, and that the court below committed no error in confirming that award. The court, in the exercise of its legitimate authority in the matter of the appointment and control of the receivers, had ample power to make such order or decree respecting the supplies furnished those receivers as the law and the facts of the case warranted, and in the absence of any circumstance showing that there was any error committed in charging the fund arising from the sale of the main line of the road with the lien for the supplies in suit, we must assume that the proceedings below were correct.

*Decree affirmed.*