## MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, OF KANSAS, V. R. E. CHILTON.

### No. 244.

**Railway Company—Receivers—Return of Property Without Sale—Agreed Decree—Betterments—Right to Sue in State Court—Excessive Verdict.**—Appellant being in the hands of receivers appointed by the United States Circuit Court, appellee, desiring to send his wife and two little girls, aged about 4 and 11 years respectively, to visit relatives near Newton Creek, a way station on appellant's line of railway between Dallas and Lancaster, bought tickets for them from the agent of the receivers, from Dallas to Lancaster, and upon such tickets the conductor in charge of the train agreed to put them off at Newton Creek crossing, a few hundred yards from where their relatives lived. Mrs. Chilton and the children boarded the train, expecting, under the agreement with the conductor, to be put off at Newton Creek crossing. When the train reached Five-mile Bottom, a point about two miles from Newton Creek, the train was stopped in a muddy swamp, in the night-time, several miles from any habitation, and they were put off, against their protest. When this suit for damages was brought, and at the time of the injury, the railroad was in the hands of the receivers, but before trial the property had been returned to appellant, and the receivers discharged by an agreed decree, to which appellant was a party. *Held:* .

1. The decree of the Federal court being an agreed decree, appellant, being a party to such agreement, and having accepted the property under it, is bound by all of its terms.

2. Appellant having agreed thereby to accept the property "subject to all claims, damages, and liabilities now existing, or which may hereafter be made against the receivers," and having been made a party to this suit, became liable herein for any damages sustained by appellee while the property was in the hands of the receivers.

3. That part of the decree of the United States Circuit Court which orders the receivers to return the property to the railway company on a certain date, is a valid order, and when the receivers did, in obedience to such order, deliver the property into the hands of the company, it was no longer in the custody of the Federal court, and it had no power or authority to require parties having claims against the receivers or against the company to intervene in the United States Circuit Court within a limited time, or forfeit their rights.

4. Independent of the decree of the Federal court, appellee had the right to pursue his remedy against the receivers in the State court, not only by State statute, but by the Act of Congress of March 3, 1887.

5. After the discharge of the receivers and the return of the property to the railway company, which was then released and placed wholly beyond the custody of the Federal court, appellee was authorized, by the agreed decree, as well as by the Act of the

Legislature of March 19, 1889, to proceed against the railway company to enforce his claim.

6. Under general principles of equity, and without reference to any statute, it has been frequently held that the receiver was the representative of the income of the railway during the receivership, and when this income was invested in betterments upon the road, a creditor could follow the same into the hands of the company, and to that extent, at least, enforce the collection of his claim.

7. The statute of 1889 has gone further than this, and enacted that where the property has been returned to the company without sale, it is responsible for a debt or liability incurred during the receivership, without reference to the question of betterments; and the act in this respect is not only constitutional, but pre-eminently just and equitable.

8. It was not error to charge the jury, that when the appellant received back the property from the receivers it took the same subject to appellee's claim, and that appellee was entitled to recover against appellant, if without such discharge he would have been entitled to recover against the receivers. The charge is good under both the statute and the agreed decree.

9. See opinion for facts under which it is held that a verdict for $1160 damages is exceedingly moderate.

ON MOTION FOR REHEARING.

1. Betterments—Presumption.—It appearing that while the road was in the hands of the receivers they placed betterments thereon of value exceeding the recovery in this case, the presumption is that this was done out of current receipts.

2. Burden of Proof.—The betterments being shown, the burden of proof was on the appellant to show that it was not from the current receipts.

Appeal from Dallas. Tried below before Hon. Charles Fred. Tucker.

*Alexander & Clark*, for appellant.—1. The claim for damages caused by injuries inflicted by the servants of receivers while they were operating a railroad is only entitled to payment out of the current receipts of the road. The decree of the Federal court discharging the receivers, and under and by virtue of which the Missouri, Kansas & Texas Railway Company, of Kansas, received back its property from the receivers, only places upon the company liabilities to the extent of the receivers' receipts or betterments turned over to said company by the receivers; and there being no proof of such receipts or betterments being turned over to the company, the evidence wholly failed to show any liability on its part, and the charge complained of is erroneous. The decree of the Federal court fixes no liability against said company in the premises other than is fixed by law, and it is the settled law of this State that the company is not liable for the negligence of the receivers ipso facto, and can only be held for such negligence where it has been alleged and proved on the trial that earnings of the railroad while in the hands of the receivers have been invested in betterments on the property which has been turned over to the company, sufficient to satisfy the claim. Railway v. Hoffman, 18 S. W. Rep., 741; Railway v. John-

son, 76 Texas, 421; Ryan v. Hays, 62 Texas, 42; Beach on Receivers, sec. 721.

2. It may be contended by appellee, as in the court below, that appellant is made liable for the damages claimed on account of the negligence of the receivers by the Act of March 19, 1889. We submit, in so far as said act attempts to make the company liable ipso facto for the negligence of the receivers, that it is well established that a railway company which is in the hands of a receiver who is operating the road by virtue of an order of court is not so accountable for injuries occasioned by the negligence of the employes of the receivers; that said act, so far as it attempts to make the company so liable for the acts of said receivers, attempts to take the property of an innocent person and give it in satisfaction of the wrong of another, when there is no charge upon said property therefor, as is the case when receivers' receipts or betterments have been received by the company with the return of the property; it attempts to take property without due process of law; it is confiscatory; it is repugnant to the Constitution of Texas and of the United States. State Const., art. 1, sec. 19; U. S. Const., art. 2, sec. 10; Id., art 14, sec. 1; Railway v. Hoffman, 18 S. W. Rep., 741; Marx v. Adams, 12 Atl. Rep., 909; Ames v. Log Driving and Booming Co., 11 Mich., 139; Rockwell v. Nearing, 35 N. Y., 307; Cool. Const. Lim., p. 445.

*Chas. F. Clint* and *Harris & Knight,* for appellee.—1. Under the terms of the decree discharging the receivers of the Missouri, Kansas & Texas Railway Company, said company, by voluntarily applying for and accepting a return of its property, became responsible, absolutely and without condition, for all the liabilities of the receivers incurred in operating the road. Railway v. Johnson, 76 Texas, 421; Ryan v. Hayes, 62 Texas, 42; Kneeland v. Brass Foundry, 140 U. S., 592; Union Trust Co. v. Railway, 117 U. S., 434, 464; Beach on Receivers, sec. 735; Gluck & Becker Rec. of Corp., p. 356, et seq.; Davis v. Duncan, 19 Fed. Rep., 477; Loan and Trust Co. v. Railway, 7 Fed. Rep., 537.

2. Whatever the responsibility of the railway company under the decree, it is absolutely charged with all the liabilities of the receivers by the Act of March 19, 1889, and it is unimportant, if the company is liable, that the court may have placed this liability on the decree instead of the statute. Acts 21st Leg., pp. 55–58; Acts 20th Leg., pp. 119–122; Ryan v. Hays, 62 Texas, 42; Railway v. Johnson, 76 Texas, 421; Act of Congress March 3, 1887, Sup. to Rev. Stats., 2 ed., pp. 613, 614.

3. The Act of March 19, 1889, supra, is a valid exercise of the police power, and it neither deprives any person of property without due process of law nor denies to any person the equal protection of the

law.    Railway v. Johnson, 76 Texas, 421; Ryan v. Hays, 62 Texas, 42; Railway v. Gibbs, 142 U. S., 386; Railway v. Mackey, 127 U. S., 632; Trust Co. v. Railway, 117 U. S., 434–464; Kneeland v. Brass Foundry, 140 U. S., 592; Beach on Receivers, secs. 723, 735; Cool. Const. Lim., 6 ed., p. 434; Gluck & Becker on Rec. of Corp., pp. 107, 108; 2 Perry on Trusts, secs. 907–915; Railway v. Wood, 24 Kan., 619; Railway v. Russel, 23 Am. and Eng. Ry. Cases, 149, and note, p. 153; Railway v. Cauble, 46 Ind., 276; Sloan v. Railway, 62 Iowa, 728.

LIGHTFOOT, CHIEF JUSTICE.—The following statement is substantially correct:

Appellee, R. E. Chilton, plaintiff below, sues H. C. Cross and George A. Eddy, receivers, the Missouri, Kansas & Texas Railway Company, of Kansas, and the Missouri, Kansas & Texas Railway Company, of Texas.    He alleges that on June 16, 1889, plaintiff desired to send his wife, Susan N. Chilton, and his two little girls, to visit relatives near Newton Creek, on the line of the Dallas & Waco Railway, in Dallas County, at which he alleges that passenger trains of said receivers customarily stopped.    That plaintiff relied upon the representations of appellants and upon the custom of said receivers to stop their train at said Newton Creek, and purchased of said receivers, through their said agent, the necessary tickets for his family from Dallas to Lancaster.    That thereupon plaintiff's wife and two daughters took passage on one of said receivers' trains, and exhibited to the conductor of said train said tickets, and the plaintiff's wife explained to said conductor her desire to be put off at Newton Creek, instead of going on to Lancaster; and said conductor having authority to do so, in pursuance of said custom, agreed to stop the train at Newton Creek, which was a well known point on said railway, and to suffer plaintiff's wife and children to alight.

That when said train reached a point about two miles north of Newton Creek, said conductor stopped the train, and in a rude and boisterous manner, and over the protestations of plaintiff's wife, rudely, willfully, and maliciously compelled her to leave the train with her little girls, two miles from Newton Creek, as aforesaid, in the midst of a swamp, and in the darkness of night, several miles from human habitation.    And plaintiff's wife undertook, in the exercise of due care and caution, to reach a public road leading to Newton Creek, by cutting across the country; but that after wandering around the swamp for several hours she at last found herself again on said railway track, and being then reduced to extremities, she followed the railway, crossing several bridges and trestles, being all the time in great fear, and at last, late at night, completely exhausted from fatigue, exposure, and fright, reached her relatives; that the exposure and excitement, brought on as aforesaid, caused plaintiff's wife to contract a severe cold and

high fever, which confined her to her bed for two weeks and left her enfeebled for several weeks, and in consequence of said injuries she sustained great physical injuries and distress of mind, to plaintiff's damage $3000.

That after the injuries aforesaid, and after the filing of this suit, on to wit, June 13, 1891, the receivers were, by the judgment of the said Circuit Court of the United States, ordered to return all the lines of the said railway company and other effects in their hands, without sale, back to the Missouri, Kansas & Texas Railway Company, of Kansas, which they did, on to wit, July 1, 1891. Further, that said judgment provided that the property of said corporation, including said Dallas & Waco Railway Company, should become liable for all claims and demands accrued or to accrue against said receivers, growing out of their possession of said property; that said corporation should receive said property subject to said demands. That the property so returned to the Missouri, Kansas & Texas Railway Company, of Kansas, by said receivers exceeded the sum of $50,000,000, and that out of the current earnings of said roads the receivers had, during their administration, made permanent and valuable betterments and improvements thereon, and supplied rolling stock to the value of over $2,000,000. That by reason of said judgment returning said property to said railway company, and by reason of the statute in such cases made and provided, and the facts above set forth, the said Missouri, Kansas & Texas Railway Company, of Kansas, is liable for said damages. That from July 1, 1891, at noon, when said property was delivered to it by said receivers, said Missouri, Kansas & Texas Railway Company, of Kansas, operated the same until June 1, 1891, when, pursuant to an Act of the Twenty-second Legislature of the State of Texas, approved April 16, 1891, in relation to the sale and conveyance of the Missouri, Kansas & Texas lines of railway in Texas, including said Dallas & Waco Railway Company, said Missouri, Kansas & Texas Railway Company, of Kansas, sold and conveyed all of its lines of railway in Texas, including said Dallas & Waco Railway, of the value of $30,000,000, to a corporation created under the laws of Texas, the same being the defendant, the Missouri, Kansas & Texas Railway Company, of Texas; that by the terms of said sale, as well as by reason of the provisions of the aforesaid judgment, said last named company became liable and promised to pay said damages, and holds all of said lines and property expressly subject to such payment.

Plaintiff asked judgment against Eddy and Cross, receivers, and against the Missouri, Kansas & Texas Railway Company, of Kansas, and the Missouri, Kansas & Texas Railway Company, of Texas.

Defendants pleaded (1) demurrer; (2) general denial; (3) defendant's admitted that H. C. Cross and Geo. A. Eddy were appointed receivers, as alleged by plaintiff, on the 4th day of June, 1888, and were

such receivers on the 16th day of June, 1889, when the cause of action herein is alleged to have accrued, and as such they had the control and operated the Missouri, Kansas & Texas Railway Company, of Kansas, including the Dallas & Waco Railway, subject to the orders of the court appointing them.    Defendants admitted that said receivers were duly and legally discharged by the court appointing them, on to wit, the 1st day of July, 1891, since which time they have ceased to exist in said capacity; (4) that on June 16, 1889, there was no way or flag station, switch or stopping place on the Dallas & Waco Railway at Newton Creek, or near Newton Creek; that said receivers sold no tickets to Newton Creek, nor contracted or agreed to let passengers on at or near Newton Creek; that defendants had stations at which to stop for passengers to get off and on its trains, regular stations located by the railroad; that otherwise trains could not run without great danger to the travelling public from collisions of trains.    Defendants expressly deny that they or either of them, or their agent or agents authorized to do so, contracted with plaintiff to transport his wife and two daughters to Newton Creek, if he would buy for them a ticket from Dallas to Lancaster; that if said agent, or any other agent, sold said tickets to plaintiff and contracted for the train to stop at or near Newton Creek, that his contract was without authority, and does not bind these defendants or either of them.    That upon their representations and at the special instance and request of plaintiff, without authority, the conductor of said receivers agreed to let them off at Newton Creek, and did stop at the place, which he thought was the proper place, and did let them off there.    Defendants denied that Mrs. Chilton and her two daughters were ejected from the train; they allege that they could have ridden on to Lancaster had they so desired, but they got off the train of their own free will and accord, without injury or force or occasion for injury or force from the conductor or other employes of the defendants.    (5) That if Mrs. Chilton and her daughters suffered any inconvenience, exposure, or sickness on account of their getting off near Newton Creek, that they alone are to blame therefor; that if Mrs. Chilton was exposed, as alleged, and made sick, it was the result of her own contributory negligence.

Upon the trial of the cause, on February 15, 1892, plaintiff dismissed his suit as to the Missouri, Kansas & Texas Railway Company, of Texas, whereupon the trial of the cause resulted in a verdict and judgment in favor of the plaintiff against the Missouri, Kansas & Texas Railway Company, of Kansas, for $1160, and in favor of Eddy and Cross, receivers, the suit having abated as to them upon their discharge by the Federal court.    Appellant duly perfected its appeal.

· The facts were substantially as alleged by plaintiff, that about June 16, 1889, the railway company being in the hands of Eddy and Cross, receivers appointed by the United States Circuit Court, appellee, de-

siring to send his wife, Susan N. Chilton, and two little girls—Ella and Etta—aged about 4 and 11 years, respectively, to visit relatives near Newton Creek, a way station on said line of railway between Dallas and Lancaster, bought tickets for them from the agent of the receivers, from Dallas to Lancaster, and upon such tickets the conductor in charge of the train, and who had the management and control of the same, agreed to put them off at Newton Creek crossing, a few hundred yards from where their relatives lived. That Mrs. Chilton and the children boarded the train, expecting under the agreement with the conductor to be put off at Newton Creek crossing. When the train reached Five-mile Bottom, a point about two miles from Newton Creek, the train was stopped in a muddy swamp, in the night-time, several miles from any human habitation, and Mrs. Chilton and the children put off, against their protest. After wandering around in the mud and darkness for several hours until about midnight, they finally reached the house of their friends. That by reason of fright, exposure, and fatigue caused from such wrongful acts, Mrs. Chilton had a long spell of sickness and suffered great physical and mental pain and distress, whereby plaintiff was damaged to the full amount set out in the judgment below. When this suit was brought, and at the time of the injury, the appellant railway company was in the hands of said receivers, but before the trial the property had been returned to the company and the receivers discharged by an agreed decree to which the company was a party, such decree being more fully set out in our conclusions of law.

1. The first assignment of error calls in question the following charge of the court: "The decree of the United States Circuit Court, read in evidence, shows, that pending this suit the defendants, Messrs. Eddy and Cross, receivers of the Missouri, Kansas & Texas Railway Company, have been discharged by said court and directed to deliver back to the Missouri, Kansas & Texas Railway Company, of Kansas, all the property in their hands as receivers. Plaintiff herein charges, that during the receivership of said railway earnings of the road were invested in betterments on said road to an amount in excess of the damages sought to be recovered in this suit, and that thereby the Missouri, Kansas & Texas Railway Company, receiving the property back with such betterments, is liable for damages. No evidence has been produced showing the investment of such funds by the receivers in such betterments, but by the terms of the decree of the Circuit Court, under which the Missouri, Kansas & Texas Railway Company, of Kansas, received back said property from the receivers, they took the same subject to plaintiff's claim in this case, and plaintiff is entitled to recover against said company, if, without such discharge, he would have been entitled to recover against the receivers."

Appellant asked special charges, to the effect that judgments can only be enforced against said company to the extent of betterments placed by the receivers on the property while in their hands, and that there being no evidence of such betterments, there can be no recovery. These requested charges were refused. The decree of the United States Circuit Court entered by agreement of appellant, in directing the receivers to return the property to the company, provides as follows:

(1) That "the property shall become liable for all claims accrued, accruing, or to accrue against said receivers arising out of their possession of said railroad property, * * * and also the current liabilities of said receivers, and all contracts for which said receivers are and may become responsible."

(2) That the company shall take the property "subject to all claims, demands, and liabilities now existing or which may hereafter be made against said receivers;" and said court attempts in said order to retain jurisdiction over the parties for the purpose of enforcing its order and protecting the receivers.

(3) It provides, that "this cause is retained and kept open for the purpose of ascertaining and determining all claims, demands, and liabilities against said receivers, and against the property," etc., providing that all parties holding claims shall intervene in that cause, or in the cases ancillary thereto, for the purpose of ascertaining the amount of such claim, and that the same "shall only be enforced against the property of said railway company to the same extent that judgments could have been enforced if said property had not been surrendered into the possession of said company, but was still in the possession of said receivers; and providing further, that such holders of claims should intervene in such causes in the Federal court on or before January 1, 1892, and after that date no further intervention should be allowed, and the rights of any such claimant not presented before then should cease and determine, and providing for advertisement of that order.

(4) It provides that nothing in this decree contained is intended to affect, or shall be construed as affecting, the status of any pending or undetermined litigation in which said receivers may appear as parties, but that the litigation may continue in the name of the receivers, or that the name of the company may be substituted.

This being an agreed decree, and the appellant being a party to such agreement, and having accepted the property under it, is bound by all of its terms. The suit of appellee was pending against the receivers at the time this agreed decree was entered, was necessarily included in the agreement, and appellant, in agreeing to accept the property "subject to all claims, demands, and liabilities now existing, or which may hereafter be made against the receivers," and having

been made a party to the suit, became liable therein for any damage sustained by appellee while the property was in the hands of the receivers.

Appellant's counsel contend, that to hold the company liable without betterments would be confiscating; would be holding it liable for the acts of the receivers for which it was in nowise responsible, and over which it had no control.   This might be a sound argument if appellant had in no way agreed to the decree, and could avoid the force of the Act of the Legislature of Texas of March 19, 1889.

That part of the decree of the United States Circuit Court which orders the receivers to return the property to the railway company on a certain date is a valid order, and when the receivers did in obedience to such order deliver the property into the hands of the company, it was no longer in the custody of the Federal court, and it had no power or authority to require parties having claims against the receivers or against the company to intervene in the United States Circuit Court in a limited time, or forfeit their rights.   This question has been repeatedly decided by the State courts, including the Supreme Court of Texas, and was affirmed on January 3, 1894, by the Supreme Court of the United States, in an able opinion by Chief Justice Fuller, delivered in the case of the Texas & Pacific Railway Company v. Johnson, on appeal from the Supreme Court of Texas.   In discussing a similar decree of the Federal court, directing the receiver of the Texas & Pacific Railway Company to return its property to its custody, in a case where suit had been brought in a State court by Johnson, who was injured during the pendency of the receivership, Chief Justice Fuller says:

"The general equity jurisdiction of the Circuit Court no doubt embraced the authority to hold possession of the property and to determine the rights of all persons who were parties, or who made themselves parties, to the proceedings before it; and if the property sequestrated had gone to sale, and a fund been realized for distribution, then, upon notice appropriate to proceedings in rem, the defendant in error might have been bound by the disposition thereupon made; yet not only was there no proof that the notice required by the order was ever given, or any other notice, but the receiver was discharged, his bond cancelled, and the property surrendered, without sale or transfer, so that it is in effect sought to have defendant in error held personally bound by an order to which he was not a party, entered by a court into which he was not brought in any manner.   *   *   *

"The order was not a decree in rem condemning the particular thing seized, but an order providing for the resumption of possession thereafter, if found necessary, to the end that such decree might then be granted; and we are aware of no principle which would justify us in holding that a court, under the circumstances which existed here, could

part with its jurisdiction over property by the complete surrender thereof to its owner, and at the same time constructively retain jurisdiction over such property so as in that respect to bind those who would otherwise be unaffected by its orders.

"The case was not one of a fund in court, and the authorities upon the question of limitation of time for the presentation of claims to share in the distribution of such a fund are not in point. It was not a case of purchase in which compliance with stipulated conditions forms part of the consideration, and the extent of the burdens assumed is defined. It did not present the question of the power of the court in the instance of a sale to deliver the property free from any liabilities whatever incurred in administration. * * *

"If the recovery of the defendant in error and the collection of his judgment had been dependent upon the order or upon any action of the Circuit Court in his favor in the original suits, a different question would have been presented; but, as the matter stands, we perceive no aspect in which that order can be treated as operating in limitation of the rights of defendant in error except in the particular of resort to the Federal court as above indicated." Railway v. Johnson, 11 Sup. Ct. Rep., No. 11, pp. 256, 257.

In so far as the order affected the rights of appellee in this case to resort to the United States Circuit Court to establish his claim, the limitation might be considered valid under this decision; but, inasmuch as he was seeking no such right, the Federal court could put no limitations upon his rights sought to be enforced in the State courts. The order or decree simply conferred upon appellee the right which he already had by law to proceed against the receivers in the State court.

He had the right to pursue his remedy against the receivers in the State court, not only by State statute, but by the Act of Congress of March 3, 1887.

After the discharge of the receivers and the return of the property to the railroad company, which was then released and placed wholly beyond the custody of the Federal court, he was authorized by the agreed decree, as well as by the Act of the Legislature of March 19, 1889, to proceed against the railway company to enforce his claim.

It is contended by appellant that this act is unconstitutional, and hence conferred no such right. It will not be necessary in this case for us to enter into any extended discussion of the constitutionality of that portion of the act which authorizes a claimant to proceed to judgment in the State court against the railway company after the discharge of the receivers. But when the case of Railway v. Johnson was before our State Supreme Court, although that statute was not enacted until after the cause of action in that case arose, Judge Stayton said: "This act was not in force when the judgment was rendered in this cause, but it tends to show that the Legislature recognized the fact

that receivers really have a representative character necessary to the preservation and enforcement, if not to the existence of rights, which the courts at all times have not fully recognized.

"In view of the fact that the business and property of large corporations charged with duties to the public, which can only be discharged by the business being conducted, are at this day frequently held for long periods in receiverships, it may be found in the future necessary and proper to hold that in such cases receivers are more fully the representatives of such corporations than they have heretofore been held to be." 76 Texas, 435.

Under general principles of equity, and without reference to any statute, it has been frequently held, that the receiver was the representative of the income of the railway during the receivership, and when this income was invested in betterments upon the road, a creditor could follow the same into the hands of the company, and to that extent at least enforce the collection of his claim. Boggs v. Brown, 82 Texas, 43; Railway v. Brick, 83 Texas, 526; Railway v. Overheiser, 76 Texas, 437; Railway v. Griffin, 76 Texas, 441; Railway v. Geiger, 79 Texas, 13; Railway v. Miller, 79 Texas, 81.

The statute of 1889 has gone further than this, and enacted that where the property has been returned to the company without sale it is responsible for a debt or liability incurred during the receivership, without reference to the question of betterments. We believe the act in this respect is not only constitutional, but pre-eminently just and equitable.

It is contended by appellant's counsel that the act violates the Fourteenth Amendment to the United States Constitution, as well as section 19 of article 1 of our State Constitution, in this, that it deprives the company of property without due process of law.

There has been much learned discussion upon the question, what is due process of law? Into this inviting field it is not necessary for us to enter. It is sufficient for the determination of this case to suggest, that appellant has not been deprived of any right or property without due process of law, because by its own agreement it undertook to become responsible for the claims of appellee, in order to get possession of the property. But considering the question under the act alone, we are unable to perceive in what respect appellant has been deprived of its property without due process of law. Such an act is really beneficial to the railway company, to the extent that it provides a method whereby it may be relieved of the expense of a receivership without waiting for the long and tedious course of final settlement. When it takes advantage of this benefit by accepting the property under the law, is it not reasonable and just that it should take it cum onore? The receivers, under the well recognized equity rule, might hold the property and operate it until all liabilities incurred pending the receiver-

ship were fully paid. Is it depriving the company of a substantial right to allow it to accept the property from the hands of the receivers charged with these liabilities? We have not been referred to any case going so far, and have not been able to find one.

Courts of equity, without statutory authority, have even gone to the extent of authorizing receivers to contract debts necessary for the operation of the road, for labor, supplies, etc., and have made such debts a prior lien on the property itself. Kneeland v. Foundry and Machine Works, 140 U. S., 597; Miltenberger v. Railway, 106 U. S., 286; Trust Company v. Souther, 107 U. S., 591.

A claim for damages against a receiver, which accrued during the receivership, has been placed upon the basis of operating expenses. Railway v. Johnson, supra; Railway v. Hays, 62 Texas, 43; 20 Am. and Eng. Encyc. of Law, 385, and authorities there cited.

Our Supreme Court has fully passed upon the Act of 1889, in the case of Ellis v. Vernon Ice Company, 23 Southwestern Reporter, 858, in a learned opinion delivered by Judge Gaines, in which it is held, that the preferred claims allowed under the act, against a receiver, may take precedence in the earnings as well as in the corpus of the property, even as against a prior mortgage—referring to McLane v. Railway, 66 California, 606; Meyer v. Johnson, 53 Alabama, 237. See also Trust Company v. Cuppy, 26 Kan., 754; Tower Mfg. Co. v. Ullman, 89 Ill., 244.

The substance of the charge complained of is this: that when the railway company received back the property from the receivers, it took the same subject to plaintiff's claim in this case, and plaintiff is entitled to recover against said company, if without such discharge he would have been entitled to recover against the receivers.

If this is true, either by reason of the agreed decree or by reason of the statute, appellant has no ground of complaint. We believe the charge to be good under both. Railway v. Wood, 24 Kan., 619; McKinney v. Railway, 22 Ind., 99; Railway v. Cauble, 46 Ind., 277; High on Receivers, sec. 397.

2. The fourth assignment of error is this: "The court erred in charging the jury as follows: 'If you believe from the evidence that on or about the 16th of June, 1889, the plaintiff purchased tickets for his family to Lancaster, and that the conductor operating the train of defendant's railroad promised the plaintiff to stop the train before reaching Lancaster, and let his wife and children off at Newton Creek, at a point opposite the house of Mrs. Chilton's sister, and that said point was a place where trains generally and habitually stopped to let off passengers; and if you further believe from the evidence that the said conductor stopped the train at a point near Five-mile Creek, and told the plaintiff's wife that it was at Newton Creek, the place where she was to get off, and that by reason of being put off at such place

plaintiff's wife suffered all or any of the injuries in body or mind, as charged in plaintiff's petition, as the direct and natural consequences of being put off at such place, then you will find for the plaintiff such damages as you may believe from the evidence to be just, fair, and reasonable compensation for such injuries.'   Because there is no testimony to support a finding that the place it is claimed the conductor promised to let Mrs. Chilton and her two daughters off of the train was a place where trains generally and habitually stopped to receive or let off passengers.''

Without entering into anything like a discussion of the evidence upon this point, it is only necessary to show that there was testimony tending to support such an issue.

R. E. Chilton testified: "It was the custom to take passengers on and let them off at Newton Creek. I got on there before. I was at my brother's; the train stopped, and I ran from the house and got on and came to Dallas.   The usual habit or custom was to stop there and put passengers on and let them off.   That neighborhood was well known. The stopping place is this side of the creek; that is where we call the stopping place.   Opposite my sister's house the public road crosses the railroad at almost right angles, and runs along by the house.  This is where the train should have stopped, and is called Newton Creek, or Newton Creek crossing.  * * *  This crossing is permanent and well known, from the fact that the public road crosses there, and it is the only rise and crossing between Five-mile Creek and Newton Creek. After this trip, sometime in July or August, I took my wife and children down, and they put us off there on tickets bought for Lancaster. That was the custom.''

3. The fifth and sixth assignments of error considered jointly as a proposition in appellant's brief are as follows:

"Fifth.   The court erred in charging the jury as follows:  'If you believe from the evidence that the conductor promised plaintiff to put his wife and children off of the train at Newton Creek, as aforesaid, and that instead of doing so stopped the train at or near Five-mile Creek, and commanded Mrs. Chilton to get off at that point, and that Mrs. Chilton told him that it was not the place where she was to get off, but that notwithstanding such statement by Mrs. Chilton, the conductor insisted on her getting off there, and did so in such a manner as to reasonably indicate that he would put her off forcibly if she refused to do so, and that Mrs. Chilton unwillingly yielded to his directions to get off there, and as the direct and natural result of getting off at the place, she suffered the injuries, mental or physical, or any of them, charged in the plaintiff's petition, then you will find for the plaintiff damages as charged in the last preceding paragraph of this charge, whether Newton Creek was a usual stopping place on said road or not.'  Because the charge submits a material issue for the find-

ing of the jury which is wholly unsupported by the evidence, viz., for them to decide whether the conductor insisted on Mrs. Chilton getting off of the train in such a manner as to reasonably indicate that he would put her off forcibly if she refused to get off.

"Sixth. The court erred in overruling defendants' motion for a new trial, because the verdict and judgment thereon are contrary to the law and the evidence, in that: (1) The evidence does not show that Mrs. Chilton was ejected from the train, but does show that she got off of the train voluntarily, thinking it was near her sister's house, rather than go to the next station for which her ticket called, thereby bringing upon herself the injuries complained of. (2) The evidence shows that the place where Mrs. Chilton wished to get off, and where the conductor promised to let her off of the train, was not a station, depot, switch, or other usual stopping place, but was any point along the railroad near her sister's house, situated in the country, several miles from any stopping place. That undertaking to so travel, defendants are not liable for the mistake of the conductor for stopping the train at a place other than the most convenient place for Mrs. Chilton to reach her sister's house. (3) The verdict and judgment thereon are contrary to the law, as given in the charge of the court, viz: 'The ticket agents and conductors of a railway company, or of the receivers thereof, have no authority to sell tickets to or enter into contracts on behalf of their principals to let off passengers at any places except regular stations or way stations, or points on the line of the railroad where the trains generally and habitually stop for the purpose of letting off passengers; and a contract of agreement made by a conductor or ticket agent to let a passenger off at some point other than a regular or way station on the railroad or place where the trains generally or habitually stop for the purpose of letting off passengers, would not be binding upon the railway company or the receivers operating such railroad, and such railway company or receivers can not be held liable for a breach of such contract.' "

The preponderance of the evidence shows that Mrs. Chilton got off the train in Five-mile Bottom—not voluntarily, but through constraint. The testimony is, that the conductor agreed to put Mrs. Chilton off at Newton Creek, which was the name of the stopping place or station, as well as the stream near it.

Mrs. R. E. Chilton testified: "We went on, and in Five-mile Bottom the train stopped. The conductor was standing in the aisle and beckoned for me to come, and me and the children got up and went to him. I says, 'This is not where Mr. Chilton told you to put us off. I know the place when we get there. I used to live out there, and this is not the place.' He says, 'I know it is; I know Newton Creek.' I began to argue with him, saying, 'This is not the place.' He spoke very 'short' to me, and took me by the arm, and says, 'Come on out; you

have to get off here.'  Of course I went on out—me and the children. He lifted us down on the ground and handed us our basket of clothes, and stepped back upon the step, on about the top step I think it was, and turned around to me and says, 'There is a tent up there in the brush.'  I told him I did not know anything about a tent.  About that time there was a man on the train near the conductor; I suppose it was the brakeman; I don't know; it was dark; I could not tell whether he was black or white.  He says: 'Oh, yes, lady; this is Newton Creek,' and he and the conductor 'busted' out in a 'ha-ha' laugh.  It was just after dark.   We were there in the bottom then.   It was very muddy, and water standing all around the train and the railroad.  I said to my oldest daughter, 'Ettie, I don't believe I can walk the railroad.  I have heard of so many tramps on that railroad; I heard of them sleeping on the railroad, and I can't walk the bridge.'  I says, 'Let's try to make it through the bottom.'"

Mrs. Chilton then describes her wanderings through the swamp and slush in her efforts to reach her sister's, about two and one-half miles distant, where she finally arrived about 12 o'clock p. m., sick, weary, and footsore.   Her testimony is fully supported by that of her daughter, who was with her, and by her husband, as to her illness.   Mrs. Chilton was accompanied by two little girls, one 10 and the other 4 years old, and had no male protector.

The appellant did not introduce the conductor, but did offer the brakeman, John Allen, who testified, that Mrs. Chilton was put off at Newton Creek crossing.

Mr. and Mrs. T. O. Lemmon, for appellant, testified, that they lived near Mrs. Chilton's aunt, and Mrs. Lemmon visited in her family, but never heard of Mrs. Chilton's being put off in a swamp until after suit was brought.

Newton Creek crossing is in an open prairie, and the "only rise and crossing between Five-mile Creek and Newton Creek."

It will be observed that the only objection made by appellant to the fifth charge above is, "because the charge submits a material issue for the finding of the jury which is wholly unsupported by the evidence, viz., for them to decide whether the conductor insisted on Mrs. Chilton's getting off the train in such a manner as to reasonably indicate that he would put her off forcibly if she refused to get off."

An examination of Mrs. Chilton's evidence will show that this issue was not only fully supported by the evidence, but that after she was put off in a swamp at night with her little children, against her protest, the conductor added insult to injury by laughing at her in her helpless condition.

4. It is useless to discuss the question whether agents and conductors of receivers have any right to put passengers off at any other places than regular stations.   The conductor was the agent of the receivers,

in charge of the train; if he had no right to put this woman and her children off at Newton Creek crossing he certainly had no right to put them off in Five-mile Bottom, and did the plaintiff great injury in doing so, for which he has the right to recover damages.

Under the facts, we think the verdict and judgment were exceedingly moderate. See Railway v. Gilbert, 64 Texas, 536. We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered April 4, 1894.

### ON REHEARING.

LIGHTFOOT, CHIEF JUSTICE.—We have carefully examined the motion for rehearing, and also the arguments filed therewith, and find no reason to change the opinion heretofore rendered by us.

At the request of appellee's counsel (though we deem it unnecessary) we find, that while the road was in the hands of said receivers they placed betterments thereon of value exceeding the amount of the recovery in this case. The presumption is that this was done out of current receipts; it could not have come from the corpus of the property. The betterments being shown, the burden of proof was on defendant to show that it was not from the current receipts. Railway v. Barnhart, 24 S. W. Rep., 331.

The motion for rehearing is overruled.

*Motion overruled.*

Delivered June 6, 1894.