## UNION TRUST COMPANY *v.* SOUTHER.

Where the complainant prays for the appointment of a receiver of mortgaged railroad property, pending proceedings for foreclosure, the court, in the exercise of a sound discretion, may, as a condition of granting the prayer, impose such terms touching the application of the income arising during the receivership to the payment of outstanding debts for labor, supplies, equipment, or permanent improvement of the property, as under the circumstances of the case appear reasonable. *Fosdick* v. *Schall*, 99 U. S. 235, and *Miltenberger* v. *Logansport Railway Co.*, 106 id. 286, cited and approved.

APPEAL from the Circuit Court of the United States for the Southern District of Illinois.

This appeal was taken because of a difference of opinion between the circuit judge and the district judge holding the Circuit Court as to a matter decided, and the facts on which the questions certified depend may be stated as follows: —

On the 7th of October, 1871, the Cairo and St. Louis Railroad Company mortgaged its property, franchises, tolls, incomes, and profits to the Union Trust Company of New York,

to secure an issue of bonds amounting in the aggregate to $2,500,000. Default was made in the payment of the interest falling due Oct. 1, 1873, and semi-annually thereafter. On the 6th of December, 1877, the Trust Company filed its bill to foreclose the mortgage, averring, among other things, that the railroad company is insolvent; " that many and large claims exist against it of the character known as floating debt; and that unless a receiver is appointed . . . great, irreparable damage to said bondholders will ensue, and the property will be liable to be greatly depreciated, and to be involved in useless litigation; and your orator and its bondholders will lose the benefit thereof as a security for the payment of said bonds." Upon this allegation it was prayed that the "court will appoint a receiver according to the course and practice of this court, with the usual powers of receivers in like cases."

As soon as the bill was filed a receiver was appointed, and in making the appointment the court, of its own motion, entered the following order: —

" And said receiver, after paying the expenses of operating, maintaining, and repairing said railroad and property, and after making such other payments herein authorized as are or may be necessary for the conduct of such receivership, shall pay and discharge all amounts due and owing by said railroad company for labor, or supplies, that may have accrued in the operation and maintenance of such railroad property within six months immediately preceding the rendition of this decree."

In 1876 the railroad company paid $3,000 to the beneficiaries under the mortgage on account of their expenses, to a much larger amount, in keeping an agency in the United States, and in connection with the forbearance which they had given the company in respect to overdue interest. Previous to the appointment of the receiver none of the current income of the company, except this single amount, had been paid to the bondholders.

When the order in respect to debts for labor and supplies was entered, the court instituted no special inquiries in respect to the use which had been made of the income prior to that time.

The receiver thus appointed took possession of the property

and operated the road until the end of the year 1881, and after a sale had been perfected under a decree of foreclosure. During the receivership the net earnings of the road, after paying all operating expenses, exceeded $200,000. The whole amount was, however, under the orders of the court, with the consent of the Trust Company, from time to time, expended "in purchasing additional grounds, rolling-stock, &c., and in making permanent repairs and improvements upon said railroad property, instead of discharging therewith the claims of [against] the railroad company for labor, materials, and supplies" during the six months immediately preceding the appointment of the receiver; and when the property was finally sold, over $65,000 of these debts remained unpaid. Among them was one to E. E. Souther & Brother amounting to $532.14 for supplies. On the 9th of May, 1878, after the receiver got into possession of the road, Souther & Brother filed in the suit for foreclosure an intervening petition praying for the allowance of their claim and its payment. On the 16th of May the claim was allowed and the receiver directed to pay it out of the net earnings "and before any improvements or ameliorations are made upon the property in his hands as receiver." On the 5th of June, both the Trust Company and the receiver filed motions to set aside this order. These motions remaining undisposed of, the road was sold under a decree of foreclosure in 1881, and brought only $4,000,000, when the amount due under the mortgage was $4,300,000 and some more. After the report of the sale was made, and a deficiency appeared, the court, on the 8th of September, 1882, set aside the order for the payment of the debt to the intervenors and allowed the Trust Company to answer. An answer was filed and proof taken which disclosed the foregoing facts. Upon the facts so established one of the questions which arose was, whether, under the circumstances, the court had the right to make an order directing the payment of the claim. The circuit judge was of the opinion that it had, and a decree was entered accordingly. From that decree this appeal was taken.

*Mr. S. Corning Judd* and *Mr. William F. Whitehouse* for the appellant.

*Mr. T. C. Mather* for the appellee.

MR. CHIEF JUSTICE WAITE, after stating the case, delivered the opinion of the court.

It seems to us that the question certified is fully disposed of by *Fosdick* v. *Schall*, 99 U. S. 235, 251, where it was said, " We have no doubt that when a court of chancery is asked by railroad mortgagees to appoint a receiver of railroad property, pending proceedings for foreclosure, the court, in the exercise of a sound judicial discretion, may, as a condition of issuing the necessary order, impose such terms in reference to the payment from the income during the receivership of outstanding debts for labor, supplies, equipment, or permanent improvement of the mortgaged property, as may, under the circumstances of the particular case, appear to be reasonable." To this we adhere, and, in our opinion, the right to impose term does not depend alone on whether current earnings have been used to pay the mortgage debt, principal or interest, instead of current expenses. *Miltenberger* v. *Logansport Railway Company*, 106 id. 286. Many other circumstances may make such an order reasonable, and this case furnishes a striking example. The first default in the payment of interest under the mortgage occurred in October, 1873. The bondholders did not see fit to take possession, as they had the right to do, when the default had continued for six months. On the contrary, notwithstanding no payments of interest had been made, they allowed the company to operate the road and incur obligations therefor until December, 1877. This was evidently in the hope that their condition would be improved by the delay; for to effect the forbearance they established an agency and incurred expenses to an amount much larger than the $3,000 reimbursed by the company. Prior to the appointment of the receiver the gross earnings do not appear to have been enough to pay expenses, but afterwards they yielded a very considerable surplus. There cannot be a doubt that it was for the interest of the bondholders that the road should be kept in operation, and as they did not see fit to take possession while it could only be operated at a loss, it was certainly not an abuse of judicial discretion for the court to order, as a condition of granting their application for a receiver, that debts incurred by the company in thus protecting the security should be paid

from the income of the receivership, if, in consequence of an increase of revenue, it could be done.

The income of the receivership, instead of being applied in accordance with the order to pay the debts for the supplies and labor, was used, with the consent, and, it may fairly be inferred, at the request of the bondholders, to buy additional grounds, rolling-stock, &c., and to make permanent improvements, thus adding to the value of the property, which was afterwards sold. There is nothing whatever to indicate that in thus using the income it was the intention of the court to revoke the original order. It seems to have been found, in the administration of the cause, that by using the income to add to the value of the fixed property the interests of all parties would be promoted, and so the fund, which in equity belonged to the labor and supply creditors, was for the time being diverted from them and put into improvements and additions, the proceeds of which are now in court. It is not to be presumed that this diversion would have been authorized if the value of the property added to and improved was not to be correspondingly increased. Clearly, therefore, on the face of the transaction, the fund in court represents in equity the income which belongs to the labor and supply creditors as well as the mortgage security, and there was no impropriety in appropriating it as far as necessary to pay the creditors specially provided for when the receiver was appointed. Such a practice, under proper circumstances, was approved in *Fosdick* v. *Schall, ubi supra*, and seems to us eminently just.

There were other questions certified in the case, but as we answer the one which has been particularly stated in the affirmative, and nothing more is needed to sustain the decree, the others will not be considered further than has already been done incidentally.                    *Decree affirmed.*

NOTE. — *Union Trust Company* v. *Fitzgerald*, appeal from the Circuit Court of the United States for the Southern District of Illinois, was submitted at the same time as the preceding case, by the same counsel for the appellant, and by *Mr. Thomas C. Fletcher* for the appellee.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The facts and questions certified in this case are in all material respects like those in *Union Trust Company* v. *Souther, ante*, p. 591. It is, therefore, unnecessary to answer the questions further than by reference to what was said in that case

*Decree affirmed.*