FARMERS' LOAN & TRUST CO. *v.* VICKSBURG & M. R. CO. *et al.*

(*Circuit Court, S. D. Mississippi.* January 23, 1888.)

1. RAILROAD COMPANIES—MORTGAGES—VALIDITY AS AGAINST CERTAIN DEBTS—CODE MISS. § 1033.

Code Miss. § 1033, which provides that no mortgage of the income, future earnings, or the rolling stock of a railroad corporation shall be valid against debts contracted in carrying on the business of a corporation, etc., does not give a prior lien to the holders of such claims, but merely prevents those claiming a prior lien under such mortgage from setting it up to defeat such claims.

2. SAME.

A railroad corporation, whose property was heavily mortgaged, made arrangements to operate its road in connection with other roads. The management of these roads was under the same general officers, although the business of each was kept separate. Sums were loaned by the corporations controlling the connecting lines to enable the indebted railroad corporation to pay its taxes, to pay its employes, and to pay balances due themselves. *Held,* that these loans were debts contracted in carrying on the business of the corporation, within the provisions of Code Miss. § 1033, providing that no mortgage on the income, future earnings, or rolling stock of a railroad shall be valid as against such debts.

3. SAME—MORTGAGES—VALIDITY AGAINST OTHER DEBTS—PAYMENT OUT OF INCOME.

Where current debts are incurred by a railroad company in the operation of its current business, they are chargeable upon the current income, as against holders of mortgage bonds of such railroad, whether they accrued before or after the railroad went into the hands of a receiver, and the fact that such debts were incurred for betterments does not affect the right to have them paid out of the current income, when the proofs show such betterments to have been necessary.

4. SAME.

Such claims accruing from within a year to six months before the appointment of a receiver are not presented too late in time.

In Equity. On cross-bills.

Bill by the Farmers' Loan & Trust Company, trustee, complainant, against the Vicksburg & Meridian Railroad Company, and others, defendants, to foreclose a second mortgage given to secure the payment of bonds. The Cincinnati, New Orleans & Texas Pacific Railway Company, the Alabama Great Southern Railroad Company, and the New Orleans & Northeastern Railroad Company filed cross-bills for payment of certain claims in priority.

*Turner, Lee & McClure* and *Lamar & Mayes,* for complainant.
*Edward Colston* and *W. L. Nugent,* for all the cross-complainants.

HILL, J.   The original bill in this cause was filed by the Alabama, New Orleans & Texas Pacific Junction Railways Company, Limited, against the Vicksburg & Meridian Railroad Company, and under it a receiver was appointed to take charge of and manage the road and property connected therewith.   The bill was filed, and the appointment made, on the twenty-sixth day of October, 1885, and the receiver, F. S. Bond, immediately took possession of said railroad, and of the property belonging to and connected therewith, and has ever since operated and managed the same under the orders of this court, having been by consent continued as such receiver upon the filing of the present bill by the Farmers' Loan & Trust Company, on the thirteenth day of August, 1886, for the foreclosure of the mortgage given to secure the payment of the second mortgage bonds hereinafter mentioned.   The complainants in the cross-bills had, before that date, filed in the former suit their petitions claiming payment out of the income of said road in the hands of the receiver of the claims set forth in the cross-bills; but, by consent, these claims are set out, and the payment thereof demanded in the cross-bills filed by them in this cause on the ninth day of May, 1887, which have been answered by the defendants thereto, issue joined, and proof taken, and the cause, as to all matters therein, is now submitted for the decision of the court, all other matters arising between the parties to this consolidated suit being reserved.

To a proper understanding of the questions presented it is necessary to state the condition of the Vicksburg & Meridian Railroad Company, and the transactions in which the claims set out in the cross-bills arose and were created, as well as the circumstances in which the second series of mortgage bonds, and the mortgage given to secure their payment, were executed.   The Vicksburg & Meridian Railroad Company, which had, by different acts of the legislature of this state, been created and consolidated, and had, under that corporate name, operated said railroad from the city of Vicksburg to the city of Meridian, in this state, for a number of years prior to the tenth day of January, 1881, found itself on that date in a very embarrassed financial condition, owing a large indebtedness, partly upon bonds secured by mortgage and otherwise, with its road-bed in a very dilapidated condition, the bridges, cross-ties, and trestling decayed and in a very unsafe condition, the rolling stock worn out and unfit for use, with few exceptions.   It was ascertained that something had to be done to meet these heavy liabilities, and to repair the road-bed, supply the same with new rails, many of those in the tracks being worn out, supply new cross-ties in place of the rotten ones, repair the bridges and trestling, repair the rolling stock, so far as it could be done, and supply the place of that which could not be repaired with such as might be necessary for the safe operation of the road.   To this end a reorganization was effected, a new board of directors was elected by the stockholders, and new officers were chosen and placed in possession of the road, and

the property connected with it and used in its operation. The company as thus reorganized issued, under authority vested in it, three series of mortgage bonds, (the first and second having interest coupons attached,) as follows: The first series, known as "First Six Per cent. Gold Bonds," to run 40 years, to the amount of $1,000,000; the second series, amounting to $1,100,000, with interest at 3 per cent. for the first two years, at 4 per cent. for the next two years, at 5 per cent. for the next year, and at 6 per cent. for the next 35 years, these bonds to run 40 years; and the third series, amounting to $1,920,000, to bear interest at 7 per cent. per annum, if earned, and known as "Third Mortgage Income Bonds." At the same time the reorganized company issued capital stock in lieu of its original stock, and as a means of increasing its capital stock, as follows: stock known as "Preferred Stock," to the amount of $1,937,889; and stock known as "Common Stock," to the amount of $3,937,189. To raise means to repair the road-bed and bridges, to supply new cross-ties and rails, and to repair and supply rolling stock, etc., a portion of these bonds and stock were sold, and the proceeds so applied.

When the mortgage bonds were issued, said reorganized company, to secure the payment thereof, with the interest coupons attached, executed mortgages, which were duly acknowledged and recorded. That to secure the first mortgage bonds, conveyed the road-bed and all the property, real and personal, then owned by the company or thereafter to be acquired, used and employed in the operation of said road, together with the future income of the road and the franchises; certain lands mentioned in the mortgage being excepted. The mortgage executed to secure the payment of the second mortgage bonds, with interest, conveyed the same property, franchises, income, etc., as were embraced in the first mortgage, constituting a second lien, and included, also, the lands mentioned above as not embraced in the first mortgage, upon which the second mortgage constituted a first lien. The mortgage executed to secure the payment of the third series of bonds conveyed the same property, rights, etc., as the former, and constituted a third lien. The holders of the bonds issued by the company and its predecessors, and those holding other indebtedness, received these new bonds in lieu thereof, the old bonds, as well as the certificates issued in place or in payment of the old indebtedness, being surrendered and canceled when the new bonds were delivered.

The purpose of the present bill, filed by the Farmers' Loan & Trust Company, as trustee, is the foreclosure of the second mortgage to pay the indebtedness secured thereby, the debtor company having made default in the payment of the interest thereon, whereby, by the terms of these bonds, the whole of the indebtedness secured thereby is become due and payable. When the reorganization was had, it was agreed that the V. & M. R., as it will be designated, was to be operated and run in connection with the Cincinnati, New Orleans & Texas Pacific Railway, the Alabama Great Southern Railroad, which will be designated as the A. G. S. R., and the New Orleans & North-Eastern Railroad, to be designated as the N. O. & N. E. R., and was to be under the management of the same general officers, but that the business, with its in-

come and outlay, was to be kept separately as though no such arrangement existed; each company having its separate secretary and treasurer, book-keeper, and other officers, all, however, subject to the same general officers, who were elected alike and paid for their services by each company; the accounts between these several companies to be settled and balanced at stated periods.    It was ascertained that the amount of funds raised by the sale of bonds and stocks, as before stated, was insufficient to pay the cost of the repairs and all that was necessary to be done to put the road-bed, rolling stock, etc., in condition to be operated safely for the transportation of persons and freight, and to make extensions of the road at Vicksburg, including an incline, so as to connect the road with the Mississippi steam-boat transportation, and with the Vicksburg, Shreveport & Pacific Railroad.    And it being to the interest of all these railroad companies that the V. & M. R. should be put in a condition to transport persons and freight safely over its line, the companies complainant in the cross-bills continued, from time to time, to furnish the V. & M. R. Co. supplies and money to purchase supplies and to pay for material and labor, and to pay the V. & M. Co.'s proportion of the salaries of the general officers.    And when, upon an accounting between the V. & M. R. Co. and the cross-complainant companies, balances were found due from the V. & M. Co. to those companies respectively, payment of such balances was, in order to enable the managers of the V. & M. Co. to apply its income to the payment of these improvements, operating expenses, etc., not demanded or insisted upon.    The question of how much was so furnished and paid, including ticket and freight balances, and when it was so furnished, was by consent of all parties referred to J. M. McKee, Esq., as special commissioner, to take proof and report thereon, which he has done, and his report is on file herein, with the evidence upon which it is based; and this report, not being excepted to, has been confirmed by the court, and will be considered as true and correct.

This report shows that after giving credit for all payments and charges made by the V. & M. R. Co. to the other companies, the indebtedness so due to the C. N. O. & T. P. Ry. Co., on the first day on November, 1885, amounted to the sum of $79,373.42, all of which accrued after the thirty-first day of December, 1884, and on the following accounts:

| | | | | | | | |
|---|---|---|---|---|---|---|---:|
| For transportation expenses, | - | - | - | - | - | - | $33,878 84 |
| " freight claims balances, | - | - | - | - | - | - | 8,069 18 |
| " car mileage, | - | - | - | - | - | - | 13,202 64 |
| " loss and damage, - | - | - | - | - | - | | 526 46 |
| " ticket balances, | - | - | - | - | - | - | 16,939 41 |
| " steel rails furnished, | - | - | - | - | - | | 6,754 41 |
| On account incline at Vicksburg, - | - | - | - | - | | 2 75 |
| | | | | | | | |
| In all | - | - | - | - | - | - | $79,373 42 |

—And that of this sum there was expended in betterments of the property the sum of $6,757.16, which inured to the benefit of the bondholders.    The report further shows that, after applying as a credit on the

account of the A. G. S. R. Co. against the V. &. M. R. Co. all payments and balances due the V. & M. R. Co., accrued subsequent to the thirtieth day of June, 1885, there were balances due the A. G. S. R. Co. on the first day of November, 1885, as follows:

| | |
|---|---:|
| For transportation expenses, | $28,797 74 |
| " freight claim balances, | 33,600 07 |
| " loss and damage account, | 16 03 |
| " ticket balances, | 562 20 |
| " amount paid on account of incline, | 217 99 |
| " account of change of gauge, | 245 37 |
| In all, | $63,439 40 |

—And that of the said amount there was expended for betterments the sum of $463.36, which resulted to the benefit of the bondholders. The said report further shows that, after applying to the credit of the V. & M. Co. upon its account with the N. O. & N. E. Co. all payments and balances accrued after the thirtieth day of April, 1885, there were due to the N. O. & N. E. Co. from the V. & M. Co. upon the first day of November, 1885, the following:

| | |
|---|---:|
| For transportation expenses, | $60,319 46 |
| " amount paid taxes, | 1,788 82 |
| " freight claims balances. | 532 79 |
| " loss and damage, | 216 99 |
| " steel rail furnished, | 820 90 |
| " on account of incline, | 176 91 |
| On account of change of gauge, | 47 29 |
| In all, | $63,903 16 |

—And that of the sum so expended the sum of $1,045.10 was for betterments to said railroad, and inured to the benefit of the bondholders.

For the above balances with interest thereon, the cross-complainants respectively claim a lien on the income of said railroad, and, if that be not sufficient therefor, then upon the proceeds of the sale of said railroad and the property belonging thereto, before the payment of the amount due upon the bonds and coupons for the payment of which the trustee has filed this bill. And they base their claim—*First*, upon section 1033, of the (Mississippi) Code of 1880; and, *secondly*, upon the rule laid down by the supreme court of the United States in the decisions hereinafter referred to. The claim is resisted by the trustee on the following grounds: (1) Because the claimants were mere loaners of money; (2) because their money was largely used for betterments; (3) because their claims are too old; (4) because they advanced the money in their own interest, and to their own associate; (5) because their loans were made without the consent, or even the knowledge, of the bondholders or their trustee.

The first question to be considered is, do these bonds, and the mortgage given to secure their payment, come within the provisions of section 1033, of the Code of 1880? They were executed more than a year after the Code of 1880 went into operation, and must be governed by it, unless

they were given only in renewal of the former bonds and mortgage, and for no other purpose, which I am satisfied they were not. They were executed in part to pay off the indebtedness then existing, and in part to put the road, with its rolling stock, in such a condition that it could be safely operated in the transportation of persons and property, and should yield a fair profit to its owners, and, this being so, the claim in avoidance of the operation of this provision of the Code cannot be maintained. The section (1033) of the Code is as follows:

"No mortgage or deed of trust conveying the income or future earnings of any corporation, or the rolling stock of any railroad company, shall be valid against debts contracted in carrying on the business of the corporation, nor against liabilities incurred by railroad companies as carriers of freight and passengers, or for damages sustained by persons or property; but such mortgage or deed of trust shall be valid as against any claim in excess of five thousand dollars for damages to any person."

I am not aware that this statute has ever been construed by the supreme court of the state, but I suppose the proper construction is to render such mortgages or deeds of trust void only so far as they convey the income or future earnings of the corporation or the rolling stock of a railroad company as against debts contracted in carrying on the business of the corporation, or for liabilities incurred by railroad companies as carriers of freight or passengers, or for damage to persons or property. I am of the opinion that the statute does not give a prior lien to those holding such claims, but inhibits those claiming a prior lien upon such property or rights from setting it up as against such claims. The question, therefore, is, did the claimants in this cause, by their proceedings, acquire any prior right to have the income of their debtor, the V. & M. R. Co., or its rolling stock, applied to the payment of the debt due them contracted in carrying on the business of the corporation or for liabilities as a carrier of freight and passengers? The property of the V. & M. Co. was placed in the hands of a receiver, and therefore could be reached, at the time or since, only in the manner pursued; that is, by an intervening petition. The mode was changed, by consent, for convenience, into the proceeding by cross-bills, so that I am of opinion that, by filing their intervening petitions, they did obtain a priority which the court will work out so far as their rights are embraced under section 1033, of the Code; but these claims can only be satisfied out of the income and rolling stock, and not out of the proceeds of the other property conveyed under this provision of the Code.

The next question, and one of great importance, is, are these cross-complainants entitled to payment of their claims or of any part thereof, under the rules laid down by the supreme court of the United States, commencing with the case of *Fosdick* v. *Schall*, 99 U. S. 235, and since followed and approved in the cases of *Miltenberger* v. *Railway Co.*, 106 U. S. 286, 1 Sup. Ct. Rep. 140; *Trust Co.* v. *Souther*, 107 U. S. 591, 2 Sup. Ct. Rep. 295; *Burnham* v. *Bowen*, 111 U. S. 776, 4 Sup. Ct. Rep. 675; and *Trust Co.* v. *Railway Co.*, 117 U. S. 434, 6 Sup. Ct. Rep. 809? From a careful examination of these cases, I am satisfied that all of them

taken together establish the following propositions, which are binding on this court irrespective of any rules to be found in the decisions of any other court, or in the text books, namely: *First*, that the purpose of building and operating railroads is of a two-fold character—(a) to afford to the public speedy and safe transportation of persons and property from one point to another; and (b) that, being common carriers, the owners of and those operating these railroads are held to all the liabilities and obligations imposed upon common carriers, and are entitled to the same rights and privileges. *Secondly*, that those who invest their means and bestow their labor in the construction and operation of these railroads are entitled to a fair and just compensation and return therefor: *Thirdly*, that railroad mortgages, and· the rights of railroad mortgagees, are peculiar in their character, and affect peculiar interests; that the officers of a railroad company are trustees of the earnings for the benefit of the different classes of creditors and of the stockholders, and if they give to one class of creditors that which properly belongs to another, the court may, upon adjustment of the accounts, so use the income which comes into its hands as, if practicable, to restore the parties to their original equitable rights. And while, ordinarily, this power is confined to the appropriation of the income of the receivership and the proceeds of moneyed assets that have been taken from the company, cases may arise where equity will require the use of the proceeds of the sale of the mortgaged property in the same way. *Fourthly*, that the current debts incurred in operating the railroad are to be paid out of the current earnings; that the class of debts to be so paid includes the payment of taxes on the property, of the officers and employes of every grade employed in the operation of the railroad, for materials and supplies furnished necessary to put and keep the railroad and the necessary rolling stock in a safe condition for the transportation of persons and property, for all ticket and freight balances due to other railroads and lines of transportation, and damages which may be incurred in operating the road, and, in a word, whatever may be necessary in the successful maintenance and operation of the railroad. *Fifthly*, that every railroad mortgagee, in accepting his security, impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim on the income. *Sixthly*, that when the income to which the class of creditors above mentioned is entitled has, by the officers of the railroad, been applied to payment for the purchase of necessary additional grounds and rolling stock, and in making permanent repairs and improvements, such sum so diverted will be refunded out of the subsequent earnings of the road. And if, by means of taking the railroad and property out of the hands of the company, and selling them ·before the amount so due is paid, its payment out of the income is made impossible, it may, in a proper case, be paid out of the proceeds of the sale of the property.

The items for which prior compensation is claimed by the cross-complainants in their cross-bills, as reported by the special commissioner, whose report has not been excepted to, and is confirmed, all fall within the class of cases which are chargeable upon the current income under

the above-stated rule, and should be allowed out of the income whether accrued before or since the railroad came into the hands of the receiver. And if the income which should have been so applied was used in the purchase of property which was necessary to putting the line of railroad and the rolling stock in a condition for the safe transportation of persons and property over the line of railway, and in making permanent repairs and improvements, then such sum will be paid out of the proceeds of sale of the property, if the income shall prove insufficient, unless prevented by the objections insisted upon by counsel for the trustee complainant. These objections will be considered in the order stated.

*First,* because the claimants were mere loaners of money. This objection would have been maintainable if the facts were as assumed, but the assumption is not sustained by the report of the special commissioner, which has not been excepted to, and has been confirmed. An examination of the accounts exhibited with the cross-bills, with the evidence taken thereon, shows that in the account of the N. O. & N. E. R. Co., the following items are charged as cash loaned, to-wit:

| | |
|---|---:|
| May 31, 1885, the sum of | $5,485 44 |
| June 30, 1885, the sum of | 5,300 00 |
| August 31, 1885, | 750 00 |
| October, 1885, | 1,083 09 |
| In all, | $12,618 53 |

—And that in the account of the A. G. S. R. Co., against said V. & M. R. Co., there appear the following cash items:

| | |
|---|---:|
| June 30, 1885, | $11,234 23 |
| August 31, 1885, | 11,200 00 |
| Making together the sum of | $22,434 23 |

The proof shows that these sums were loaned to the V. & M. R. Co., to enable it to pay taxes imposed upon the railroad property; to pay balances due the C. N. O. & T. P. Ry. Co., and to enable the said V. & M. R. Co., to pay off its employes; all of which claims, if held by the persons and corporations to whom they were due, would have been chargeable upon the income of the V. & M. R. The proof further shows that the money was advanced or loaned for the purpose stated, and was so applied. If the corporations had purchased these claims, then they would have occupied the same position that the creditors occupied before such sale; but the proof shows the transaction to have been a loan of money, and I am not aware of any rule that gives to these companies any more favorable position than that of a general creditor, under the rule announced by the supreme court in the cases referred to. Yet I am of opinion that these debts were contracted in carrying on the business of the V. & M. R., and consequently the mortgage is void as to them so far as it relates to the income and rolling stock.

The second objection is that the money was largely used for betterments. This objection is untenable, for if these betterments were necessary, and added to the value of the security held by the bondholders,

and were made without objection on their part, they cannot be heard to complain. The proof does not show that any but a part of the money was so used, and it shows that such portion of it so used was necessary, and added to the value of the property.

The third objection is that these claims are too old. All the items charged accrued within less than a year before the appointment of the receiver, and that of the N. O. & N. E. Co. within six months before the appointment of the receiver. This, under the rules stated, is within time, and section 1033 of the Code has no limit to its operation.

The fourth objection is that these cross-complainants advanced the money in their own interests, and for their own benefit. The proof does not show that there was any partnership between these corporations, although, by consent, and for the mutual interest of all, they were operated under one general management, by one set of general officers, elected by each separately, each company being liable for its own liabilities and receiving its own profits. There is nothing in the proof going to show that the V. & M. R. Co. has been in any way injured or prejudiced by this arrangement, but the contrary. The property of the company, which was in a most dilapidated, ruinous, and unsafe condition, has been repaired, improved, equipped, and placed in first-class condition, · and it now constitutes one link in a long line of railway, and is worth hundreds of thousands of dollars more than it was when this general management was entered into. And it has since been conducted so that the value of the security to the bondholders has been greatly increased. The general officers were the trustees for all alike, and, so far as the proof goes, acted in good faith to all these corporations. So that this objection cannot be maintained.

The fifth and last objection is that these loans were made without the consent or even the knowledge of the bondholders or their trustee. As before stated these claims contain no items of loaned money as made by the C. N. O. & T. P. Ry. Co. and only $12,618.53 by the N. O. & N. E. R. Co., and $22,434.23 by the A. G. S. R. Co., which will be excluded under the general rule, and only made available under section 1033 of the Code. All the other items are strictly within the general rule, so that this objection cannot be maintained.

The proof shows that the amount of the income of the road which has been applied to the purchase of rolling stock, new rails, new cross-ties, new bridges, and other improvements and betterments, greatly exceeds the amount of the claims of the cross-complainants. The result is that they, with the interest thereon, must be paid out of the income of the V. & M. R., whether earned before or since the appointment of the receiver, if there be so much; and if not, then out of the proceeds of the sale of the railway. And, so far as the claims relate to loaned money, they must be paid out of the proceeds of sale of the rolling stock, and out of the income, under the provisions of section 1033 of the Code.