NEW YORK SECURITY & TRUST CO. v. EQUITABLE MORTGAGE CO.
(HOLDEN, Intervener).

(Circuit Court, W. D. Missouri, W. D.    January 27, 1896.)

EQUITY PRACTICE—ANCILLARY RECEIVERSHIPS—PROOF OF CLAIMS.

Receivers of a Missouri corporation were appointed by the circuit court for the Southern district of New York, at the suit of a New York corporation. The same persons were appointed ancillary receivers by the circuit court in Missouri, where the principal part of the business of the corporation had been transacted; the order for their appointment containing a direction to appoint an agent in Missouri to receive service of process, notices, etc., with which the receivers complied. Subsequently, a creditor residing in Missouri applied to the circuit court there to determine the existence and amount of a claim against the insolvent corporation, arising out of transactions which took place in Missouri. Held that, although the New York court was the court of primary jurisdiction, and was the proper tribunal to pass upon the distribution of the fund in the receivers' hands, the Missouri court would not dismiss the creditor's application, but would entertain it, at least so far as to determine the existence and amount of his claim, without requiring him to resort to a foreign jurisdiction to prove the same.

W. C. Scarritt, for intervener.
Karnes, Holmes & Krauthoff, for receivers.

PHILIPS, District Judge. The complainant in the original bill in this case is a New York corporation, and the defendant therein is a Missouri corporation, located at Kansas City, in this district. The chief business of the latter company was to loan money upon real-estate security, issuing what are known as "debenture bonds," secured by real-estate mortgages, which it negotiated, guarantying payment thereof. These loans were principally secured on lands in Missouri and adjoining Western states. While the company had an office in the city of New York, where its president and other officers had a situs, its actual business, within the contemplation of its charter, was conducted here, through its agents and representatives. Yet, as is quite customary with such concerns, when its of-

ficers and stockholders desire the aid of courts to meet the conditions of its impaired credit, and exposure of its assets to judgment and execution at suit of its creditors, it went around the court of the state granting its franchise, and where its corporate powers were mainly exerted, and brought about the appointment of receivers in the United States court at the city of New York. Thereupon, as usual, the circuit judge of this circuit was applied to for an ancillary receivership, with ready-made decree and named foreign receivers for its approval, whose acceptance by this court was based upon judicial comity, and coerced by courtesy. A decree was accordingly entered in this court, by the circuit judge, creating an ancillary receivership. The court that has had the labor, the vexation, and the responsibility of conducting and administering the affairs of this estate in this locality, had no choice in the selection of the agents known as "the right arm of the court." While this court is quite an indispensable adjunct in aiding the receivers in any suits or proceedings instituted by them here in the management of the trust property, and making multiplied orders asked for by them, it is, according to their contention in the pending matter, wholly without jurisdiction to hear and determine a demand against the insolvent corporation by a citizen resident here, growing out of transactions had here, with and through the agents of the corporation while it was a going concern.

The Kansas City Safe Deposit & Savings Bank is a Missouri corporation, which conducted its business at Kansas City, in this district. Becoming insolvent, Howard M. Holden, of said city, was made assignee, under the statutes of the state, of said bank, whose affairs are being administered by him under the supervision of one of the state courts. He presents, by way of intervention, to this court, his petition, showing that, out of transactions had between said bank and the Equitable Mortgage Company at Kansas City, while they were going concerns, a large indebtedness arose in favor of the bank against the Equitable Mortgage Company, the amount of which is controverted by the receivers, and praying that the existence and amount of said claim be adjudicated by this court against the receivers. The receivers and the complainant in the foreclosure proceedings move to dismiss this petition, on the ground that the New York court has exclusive jurisdiction over the subject-matter of this controversy. No contention is made here by the intervener but that, in the matter of adjusting the priorities among the creditors of the insolvent estate, and in determining the order, manner, and time of the distribution thereof, the court in which the receivership first attached should have exclusive jurisdiction. But it is insisted that the intervener should be permitted to litigate here the question of the existence and amount of the claim against the insolvent corporation.

The rule of procedure invoked by the complainant and the respondent receivers, which draws to the court initiating the receivership jurisdiction over claims against the estate, has its foundation in the necessities of the situation growing out of ancillary

receiverships, extending, as they often do, through various districts. The confusion liable to result from conflicting rulings and the decisions of the different courts respecting liens, priorities, and preferences among creditors, and the parceling out among them in the order determined by each court, might lead to intolerable contradictions and injustice. · To preserve the unity of the common fund, and to prevent inequalities in the manner, occasion, and time of distribution, there should be but one court of final arbitrament to decide and adjudicate, when and where all parties in interest could have their day in common in court. I think it is not too broad to say that, in every instance where this rule has been successfully invoked against the jurisdiction of the ancillary court, it will be found to be where the intervener sought to have his claim ordered paid by the ancillary court. I find no considerate case where, under circumstances like these at bar, the claimant was denied the right to have adjudicated, in the court of his jurisdiction, the question of the existence and extent of his claim against the estate. On the contrary, it is inferable, from utterances in the opinions delivered by judges, that the existence of the jurisdiction here contended for is assumed. Railway Co. v. Felton, 69 Fed. 283; Central Trust Co. v. East Tennessee, V. & G. Ry. Co., Id. 658–666; Clyde v. Railway Co., 65 Fed. 340. The hardship and inconvenience of compelling a creditor to go to New York to litigate his claim against the receivers, growing out of transactions had here with the citizen corporation of this state, is instinctively wrong and oppressive. In many instances, such a rule would, in practice, amount to a denial of justice. The expense and annoyance attending a litigation at a point remote from the locality where the cause of action arose would compel the abandonment of small claims, and encourage the practice of corporations like the respondent and foreign creditors to initiate the receivership at remote points from where the real business of the corporation was conducted. It is evident that Judge Caldwell had in mind the mitigation of this abuse in practice, when he made the order appointing these receivers in this district. At the conclusion of the order, which was, in effect, but a transcript of the order of the New York court, he added the following paragraph:

"It is further ordered that said receivers designate, in due form, some person having an office in the place in which the office of the clerk of the circuit court of this district is located, on whom service of notices, writs, and other process may be made, and that said receivers execute and file in said clerk's office a notice, stating the name and residence of such agent, and that he is authorized, in behalf of the receivers. to receive and accept service of notices and writs and other process, as herein designated, and that service of notices and writs on said agent shall be equivalent to personal service on said receivers, whether said notices or writs are issued out of this or any state court."

In conformity therewith, the receivers, in due form, designated, in writing, filed in the clerk's office of this court, the clerk of this court such "person." It was competent for the court, in appointing such receivers, to impose such conditions and obligations. Central Trust Co. v. Texas & St. L. Ry. Co., 22 Fed. 137; Trust Co. v.

Souther, 107 U. S. 591, 2 Sup. Ct. 295.   What could have been the mind and purpose of the court in requiring these receivers to designate, in this jurisdiction, a person upon whom writs and process might be served, if no claimant was to be permitted to have his claim against this corporation adjudicated in this court?   Evidently, it was to avoid the hardship and injustice of requiring just such a claimant as this intervener to go to the city of New York to litigate his claim against this estate.   This precise question, in so far as this court is concerned, has been determined in this district. Judge Sanborn, in Ames v. Railway Co., 60 Fed. 967–974, observed:

"It is unnecessary to discuss or decide here whether the circuit court sitting in Colorado or Wyoming is a court of ancillary jurisdiction in the matter of this receivership.   These receivers were first appointed in this court, sitting in Nebraska.   So far as the general management of the trust imposed upon them, the general operation of the railroad system in their charge in this circuit, and their general accounting, is concerned, they must report to and be governed by this court, sitting in Nebraska.   The impracticability of properly administering this great trust under any other practice, and the intolerable confusion which would result from contradictory orders, regarding these subjects, made in the different districts in the circuit, will commend this rule of practice to every judge within the jurisdiction, and prevent any interference or modification of the orders issued in these matters by the circuit court for the district of Nebraska, except by appeal or upon rehearing; but the circuit courts in the districts of Colorado and Wyoming have jurisdiction to hear and determine the claims of the citizens of those districts against the insolvent corporation and the receivers of it, and their determination of those matters will be equally respected by the court sitting in Nebraska.   Citizens of one district will not be required to go to another district to assert their claims against receivers appointed by the courts of both districts."

I cannot accept the suggestion of the learned counsel, in trying to get away from the broad language of this declaration, that it should be restrained to the instance of the facts of a case where the ancillary receivership supervenes in the same circuit.   The federal judicial department is divided into circuits and districts.   This is rather for convenience in administration than for the unification of the districts within the particular circuit.   When a justice of the supreme court or the judge of the circuit court sits to transact business nisi, it is in one of these courts in a given district.   His judgments and decrees are entered of record in the court where he sits.   When he makes a decree appointing a receiver, it is entered up in a specified court of the district; and the court in which the proceedings are initiated becomes the court of primary administration, although a like order may be entered in the other district courts of the circuit.   Each district court, under the existing system, retains its separate autonomy; so that the respective district courts of the circuit are as independent of each other as from those of another circuit.   Precisely what Judge Sanborn meant to say, and did say, was that citizens of the state of Colorado would not be required to forego the hearing and adjudication of their claims against the receivers in the Colorado court, and be coerced to go to Omaha, where the receivership originated.   "Citizens of one district will not be required to go to another district to assert their claims against receivers appointed by the courts of both districts."

Nor is the contention valid that, unless the court taking jurisdiction to render judgment can proceed to execution and the enforcement of that judgment, its jurisdiction cannot obtain in the first instance. It is not an unusual thing, in practice, for a court rendering judgment, finding and determining the amount of a claim, to certify it elsewhere for satisfaction. A claimant obtains leave of the United States court, in cases of receivership, where his cause of action in personam arose before the appointment of receivers, and without such leave where it arises during the administration by the receivers, to sue in the state court. In such case he proceeds only to judgment, after which his claim is presented to the court of primary administration for classification and payment. Even where he has sued and obtained judgment prior to the appointment of receivers, he cannot proceed to execution, but must intervene in the receivership to have his judgment recognized and classified for payment. Wiswall v. Sampson, 14 How. 60. "A judgment may be complete and perfect, and have full effect, independent of the right to issue execution." Dillingham v. Hawk, 9 C. C. A. 101, 60 Fed. 497; Mills v. Duryee, 7 Cranch, 481. And the judgment of the court will be respected by the court first appointing the receivers in distributing the assets. Supra.

These receivers, having come into this court for assistance in conducting the administration of the estate, and having accepted the conditions imposed upon them by the concluding paragraph of Judge Caldwell's decree affirming their office as receivers, cannot now escape their obligation to litigate this claim here on the ground that an order has been obtained from the New York court for a reference to a master, and by reason of his giving notice to creditors, fixing a time and place, which, of course, is the city of New York, for the hearing of claims before him. This claim, in one form or another, came before this court, with notice to the receivers, before the reference to said master, and the receivers ought not to be required to make, and they ought not to consent to, a distribution of the funds in their hands until the case here pending has been determined. What the result of a final distribution of the assets by the court in New York may be, pending this controversy here, is a question not before this court. But, having voluntarily come into this court, and submitted themselves to its jurisdiction as such receivers, they will not be discharged herefrom without the leave of this court. The motion is denied.