## COURSEY et al. v. INTERNATIONAL HARVESTER CO. et al. (two cases).

### Nos. 1909, 1910.

Circuit Court of Appeals, Tenth Circuit.

Feb. 12, 1940.

Earl Bohannon, of Parsons, Kan., and John H. Hunt, of Topeka, Kan. (J. L. Hunt, of Topeka, Kan., and A. H. Noyes, of Parsons, Kan., on the brief), for appellants.

Harry W. Fisher, of Fort Scott, Kan., and George W. Berry, of Piqua, Ohio, for appellee French Oil Mill Machinery Co.

Douglas Hudson, of Fort Scott, Kan., for appellee International Harvester Co.

Before PHILLIPS, HUXMAN, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge

The two appeals are from a proceeding under Section 74 of the Bankruptcy Act, as amended and approved March 3, 1933, 11 U.S.C.A. § 202, for permission to effect a compromise or extension with creditors, and question of priority of liens for receiver's certificates and expenses incurred while the business was being operated under an order of the United States District Court of Kansas.

Prior to December 20, 1937, Markwood Webster Coursey and Clinton Cecil Zercher were co-partners under the name· of Coursey Rendering Service at Parsons, Kansas, engaged in the business of gathering carcasses of dead animals in the surrounding territory and reducing the same to oils, meat scraps, feeds, hides and other by-products. The partnership having become heavily indebted and unable to operate such business, on December 20, 1937 filed a petition in the United States District Court for the District of Kansas to effect a compromise or extension with its creditors under Section 74, as amended, of the Bankruptcy Act.

The petition having been found by the court to have been properly filed under said section was approved. On the same date, a petition was presented to the judge of said court asking for the appointment of a receiver,[1] and without any appearance by or any notice had upon either of said appellees (International Harvester Company or French Oil Mill Machinery Company) the court made an order, no appeal being prosecuted therefrom, in part as follows:

"It appearing to the court that it is necessary to preserve said estate that a receiver be immediately appointed; now, on motion of Earl Bohannon, Esquire, attorney for said debtors,

"It Is Ordered that M. W. Coursey of Parsons, Labette County, in said District, be, and he is hereby appointed receiver of the estate of said bankrupts, on filing of bond in the sum of $5,000.00, with sufficient sureties to be approved by this court; that said receiver continue the business of said bankrupts at Parsons, in said District; that said receiver have power to employ such clerical help and labor as may be necessary to operate said business, with power and authority to borrow money with which to operate said business, in a sum not to exceed $5,000.00, and to issue receiver certificates therefor, which said certificates, when so issued, shall be and constitute a first lien upon all the assets, not exempt by law, of said debtors."

M. A. Coursey immediately qualified as receiver and continued to act as such until February 28, 1939, and under said order as receiver issued certificates totaling $4,500, each certificate containing the following clause: " * * * and by virtue thereof the holder hereof has a first lien upon all of the property belonging to the said debtors, as such partnership, except such as is exempt by law."

---

[1] An excerpt from said petition is as follows:

"That they are engaged in the business of collecting the bodies of dead animals and rendering the same into oils and other products for the regular commercial market; that they have in their employ 10 persons and maintain and operate a plant in Labette County, Kansas, and that the value of their assets, is to a large extent dependent upon the keeping of said plant in constant operation; that they are being threatened by certain of their creditors with legal actions which would interfere with the operation of said plant and with the cutting off of certain public utility services which would force the immediate ceasing of operations for said partnership; that these debtors are in active competition with competitors from similar plants located in other cities and counties to whom these debtors might lose a large part of their business should their plant cease to operate for even a limited time; that it is necessary and for the best interest of said debtors, and each and all of their creditors, that a conservator or receiver be immediately appointed to take charge of said plant and all the equipment used in connection therewith, with authority to operate said plant and all the equipment owned and used in connection therewith by and under the directions of this Honorable Court.

"Petitioners further show to the court that they have no funds on hand or available with which said receiver could operate said business, and by reason thereof it is necessary and for the best interests of said debtors and all of the creditors of said partnership that the said receiver, if and when so appointed, be authorized and directed to borrow such monies as may be necessary to operate said plant, pending this proceeding, and to issue receiver certificates therefor, said receiver certificates when issued to constitute a first lien on the assets of said partnership."

Certificates were issued as follows: December 22, 1937 for $1,000; December 31, 1937 for $1,000; April 9, 1938 for $500; in May, 1938 for $500; June 14, 1938 for $500; October 28, 1938 for $1,000; all of said certificates being issued to the Parsons Commercial Bank, said bank paying the receiver therefor the full face value.

On January 18, 1938 an offer of extension was filed in which the debtors proposed that the receivership be continued until the propositions submitted were carried out and completed, providing that debtors were to make periodical payments to the French Oil Mill Machinery Company, the International Harvester Company and others, the time of payment of indebtedness to be extended. The offer of extension was approved by 95 creditors and over 95% of all the allowed claims. The referee recommended that the plan be approved. On January 19, 1938, the District Court having found that approximately 95% in number of all creditors whose claims had been allowed and over 98% in amount of all claims allowed had approved the plan of extension, approved such plan and authorized the receiver to carry it out.

The International Harvester Company on January 14, 1938, filed a claim as a secured creditor with a lien upon three trucks, same being allowed as a secured claim in amount of $874. The French Oil Mill Machinery Company on January 11, 1938 filed a claim for $7,814.16, as a secured claim, which was allowed.

The receiver continued the operation of the business until October 18, 1938, when he filed a petition showing that there had been a loss of $6,915.40 in its operation to October 1, 1938. An offer was made by James H. DeJarnette for the purchase of the property free and clear of all liens for $8,500, the offer being later increased to $9,650. The petition for sale was set for hearing on November 3, 1938, the creditors notified, and a hearing held. The receiver in said petition claimed priority in the proceeds of the sale to pay receiver's certificates and expenses of the receiver. This was controverted and the Harvester Company asserted liens by virtue of conditional sales notes and chattel mortgages on three trucks, and the French Company by conditional sale contracts on the machinery of the partnership, constituting the principal assets of the concern. Objection was made as to such sale save and except that any such order for sale and as a part thereof the priority of the secured claims be recognized and immediately paid. The Harvester Company also filed a reclamation petition seeking to recover the three trucks on which it claimed such lien. The referee, among other things, found that the Harvester Company and French Company were bound by the order appointing the receiver and authorizing him to borrow moneys, and further that both companies waived any claim they might have to priority over the receiver's certificates and operating expenses, and concluded that the offer which had been increased to $9,650 should be accepted and the property sold free and clear of all liens, and the proceeds applied first to the payment of the expenses of the receiver and the receivership certificates, with interest, and the balance applied to the payment of the "formerly secured claims."

The report of the referee was filed in the United States District Court for Kansas on November 29, 1938, and thereafter the court duly entered an order for a hearing on the referee's report. The Harvester Company and French Company filed petitions for review. On December 8, 1938, the referee submitted his certificate on petitions for review to the court. The report of the referee being disapproved by the court, the whole proceeding was referred to the referee under a general order of reference, dated February 16, 1939, in which it is stated: "The court, considering the report of A. M. Keene, Esquire, finds that the said master apparently misconstrued an order made by this court on December 20, 1937, authorizing the receiver to borrow not to exceed Five Thousand Dollars ($5,000.00) and to issue Receiver's Certificates therefor, which said Certificates, when so issued 'shall be and constitute a first lien upon all the assets, not exempt by law, of said debtors.' It was not the intention of the court in granting such order to make such Certificates prior to valid, subsisting liens on any part of the debtors property existing at the time of the granting of the order."

Notice of appeal therefrom was filed in the district court on March 16, 1939, together with assignments of error, and a petition for appeal was presented to said court on March 17, 1939, and a cost bond fixed in the sum of $250.

The matter was again heard before the referee on February 27, 1939. The referee, on the testimony, pleadings, record, and

exhibits introduced at the first hearing and on certain statements and admissions by counsel and the parties, made his findings and conclusions of law on the re-reference. On the said second hearing the referee directed the assets to be sold free and clear of all liens to James H. DeJarnette for $9,650, and ordered that the proceeds from such sale should be paid as follows: $834 to the Harvester Company, $5,500 to the French Company, and the residue to be held subject to the further order of the court.

Petitions for review were filed by the bank, the receiver, the Harvester Company, and the French Company, the referee submitting with his report the following certified question to the court: "The precise question presented to the court is, whether the receiver's certificates issued herein and the unpaid receiver's expense shall have payment in advance of payments to the secured creditor." The certified question and the report were heard by the court on March 30, 1939, the report being approved as filed. In the findings of fact contained in the receiver's report, it appears that on February 27, 1939, the proposed offer of DeJarnette for $9,650 was considered, and the attorneys representing the Harvester Company and the French Company suggested that they had been authorized to reduce the claims as follows: Harvester Company from $874, to $834, and the French Company from $7,814.16 to $5,500, provided the sale was made and such claims be recognized and paid forthwith, but if an appeal was taken they desired to save their exceptions to an agreed order to that effect so as to reserve the right to contend for the full amount of their respective liens.

Notice of appeal and assignments of error were filed on April 6, 1939. Petition for allowance of an appeal was also filed in the district court and allowed. Motions to dismiss both appeals were filed by the Harvester Company and the French Company, grounds for dismissal of the first being (1) that it was interlocutory, and (2) that it was not allowed by the Circuit Court of Appeals, and the ground for the dismissal of the second appeal that it was not allowed by the Circuit Court of Appeals.

As both appeals involve the same question, a decision of the second appeal necessarily decides the question on the first appeal, it not being essential to determine whether the first appeal was properly taken.

■ The contention is that the second appeal was properly taken since notice of appeal was given in accordance with the new rules of federal procedure and that such new rules now govern appeals in bankruptcy.

General Order in Bankruptcy 36, 11 U.S.C.A. following section 53, provides that: "Appeals shall be regulated, except as otherwise provided in the Act, by the rules governing appeals in civil actions in the courts of the United States, including the Rules of Civil Procedure for the District Courts of the United States."

General Order in Bankruptcy 37 is as follows: "In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States * * * shall, in so far as they are not inconsistent with the Act or with these general orders, be followed as nearly as may be. But the court may shorten the limitations of time prescribed so as to expedite hearings, and may otherwise modify the rules for the preparation or hearing of any particular proceeding."

Appeals in bankruptcy are now governed by the new rules, except in cases where the amount involved is less than $500. 11 U.S.C.A. § 47, sub. a.

As the second appeal was taken in accordance with the new rules, and the amounts involved are more than $500, the motions to dismiss should be denied.

■ The order entered on December 20, 1937, without any notice to the secured creditors, authorized the receiver to borrow not to exceed $5,000 and to issue receiver's certificates therefor which should constitute a first lien upon all the assets not exempt by law of the debtors was later by the court interpreted as follows: "It was not the intention of the court in granting such order to make such certificates prior to valid, subsisting liens on any part of the debtors property existing at the time of the granting of the order."

In Union Trust Co. v. Illinois Midland R. Co., 117 U.S. 434, 439, 6 S.Ct. 809, 823, 29 L.Ed. 963, it is said: "Those who take receiver's certificates must be deemed to have taken them subject to the rights of parties who have prior liens upon the property, and who have not, but should have, been brought before the court. While the court, under some circumstances, and for some purposes, and in advance of the prior

lienholders being made parties, may have jurisdiction to charge the property with the amount of receiver's certificates issued by its authority, it cannot, without giving such parties their day in court, deprive them of their priority of lien. When such prior lienholders are brought before the court they become entitled, upon the plainest principles of justice and equity, to contest the necessity, validity, effect, and amount of all such certificates, as fully as if such questions were then for the first time presented for determination. If it appears that they ought not to have been made a charge upon the property superior to the lien created by the mortgages, then the contract rights of the prior lienholders must be protected." See, also, Northern Finance Corporation v. Byrnes, 8 Cir., 5 F.2d 11; United Surety Co. v. Iowa Mfg. Co., 8 Cir., 179 F. 55; In re Erie Lbr. Co., D.C., 150 F. 817; Union Trust Co. v. Southern Sawmills & Lbr. Co., 4 Cir., 166 F. 193; Farmers' Loan & Trust Co. v. Grape Creek Coal Company, C.C., 50 F. 481, 16 L.R.A. 603; Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339; Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672; Miltenberger v. Logansport, C. & S. W. Railroad Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117; Wood v. Guarantee Trust & Safe-Deposit Co., 128 U.S. 416, 9 S.Ct. 131, 32 L.Ed. 472; Kneeland v. American Loan & Trust Co., 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379; Morgan's, etc., Co. v. Texas Cent. R. Co., 137 U.S. 171, 11 S.Ct. 61, 34 L.Ed. 625.

A court may not authorize the issuance of receiver's certificates for the purpose of improving or adding to the property of a private corporation, or of carrying on its business, without the consent of creditors whose liens would be affected thereby. Baltimore Bldg. & Loan Ass'n v. Alderson, 4 Cir., 90 F. 142; Hanna v. State Trust Co., 8 Cir., 70 F. 2, 30 L.R.A. 201; Nicholson v. Western Loan & Bldg. Co., 9 Cir., 60 F.2d 516; Doe v. Northwestern Coal & Transportation Co. et al., C.C., 78 F. 62; Fidelity Insurance, Trust & Safe-Deposit Co. v. Roanoke Iron Co., C.C., 68 F. 623; Laughlin v. United States Rolling-Stock Co., C.C., 64 F. 25; Wallace v. Loomis, 97 U.S. 146, 24 L.Ed. 895; Union Trust Co. v. Souther, 107 U.S. 591, 2 S.Ct. 295, 27 L.Ed. 488; Jerome v. McCarter, 94 U.S. 734, 24 L.Ed. 136; Ex parte Parker, 131 U.S. 221, 9 S.Ct. 708, 33 L.Ed. 123.

In the findings made by the trial court it is stated that the court in the order granting the issuance of receiver's certificates did not intend to and did not in fact make receiver's certificates prior and superior to the secured liens of the French Oil Mill Machinery Company and International Harvester Company.

The facts here disclose that as to the French Company's machinery, with its prior lien on it, located in the plant of the debtor, and the Harvester Company's lien covering trucks used by the debtor in transporting its raw materials and products, the continuation of the business and the expenditure of moneys realized on the receivers' certificates would not in any way benefit them by improving or adding to the value of the security. A continuation of the business, in fact, would lessen their security as by its use same would be depreciated by use and wear.

This proceeding instituted under Section 74, sub. i, as it existed at the time the certificates were issued under Bankruptcy Act as amended March 3, 1933, 47 Stat. 1467, June 7, 1934, c. 424, Section 2, 48 Stat. 922, 923, May 15, 1935, c. 114, Section 2, 49 Stat. 246, 11 U.S.C.A. § 202, sub. i, p. 959, ch. 8, relating to extension or composition by individuals or partnerships, provides that: "Upon its confirmation an extension proposal shall be binding upon the debtor and his unsecured and secured creditors affected thereby: Provided, however, That such extension or composition shall not reduce the amount of or impair the lien of any secured creditor, but shall affect only the time and method of its liquidation." Bankruptcy Act, Section 74, sub. i.

As to reorganizations of railroad corporations, authority was granted with the approval of the Interstate Commerce Commission in accordance with Section 20a of Title 49, as of August 27, 1935 or thereafter amended, to authorize the trustee or trustees to issue certificates with priority over existing obligations secured or unsecured or receivership charges. Section 77, Section 205, sub. c, ch. 8, p. 1021, 11 U.S.C.A.

As to general corporate reorganizations aside from railroad corporations, authorization was granted as to the debtor or trustee to issue certificates with priority over existing obligations secured or unsecured. Section 77B, sub. c(3), ch. 8, Title 11 U.S.C.A. § 207, sub. c(3), p. 1062.

As to whether the grant of express authority for the issuance of receiver's certificates in said sections of Chapter 8 on Bankruptcy relating to railroad reorganization and other corporate reorganizations, with omission of such authority in sections relating to extensions as to individuals, without more, would constitute a legislative interpretation against the exercise of the power to issue such receiver's certificates under an individual or partnership extension, on account of the express prohibition, except as to time and method of its liquidation to be affected, contained in said section 202, it is not essential to determine.

■ As a rule, receiver's certificates issued by the receiver of a merely private corporation neither public nor a quasi-corporation, are not a charge against the assets of the corporation in preference to existing liens as against lienors who have not consented to their issue.

In Iversen et al. v. Docon (In re Iversen et al.), 7 Cir., 85 F.2d 159, said section 202 on an extension petition is construed and held as to prior liens that same could affect only as to time and manner of payment.

■ The court was without power to make the order authorizing receiver's certificates to displace or impair the prior liens of the Harvester Company and the French Company.

■ It is further urged that the contention of the Harvester Company and the French Company that the receiver's certificates have not priority over their secured indebtedness is without force on account of estoppel.

The petition having been filed under Section 74 of the Bankruptcy Act, as amended, for the purpose of effecting a composition or extension of time, the Harvester Company and the French Company in so treating it, willing for the partnership debtor to have additional time in which to work out a solution of their problems, neither created an estoppel against nor waived their prior liens.

They had no actual notice that receiver's certificates were to constitute a first or prior lien to their existing liens, until the proposal to sell the property, at which time they specifically interposed an objection to the displacing or impairing of same.

As to the question of waiver of their lien, an estoppel is an indispensable element of a waiver. Lewin v. Telluride Iron Works Co. et al., 8 Cir., 272 F. 590, and authorities therein cited.

■ Elements of an estoppel are (1) ignorance on part of the parties who invoke the estoppel or him from whom such parties derive such claim, (2) a representation by word or act by party estopped which has misled, and (3) an innocent and detrimental change of the party asserting the estoppel in reliance upon the representation. Northern Assurance Co. v. Grand View Bldg. Co., 8 Cir., 101 F. 77.

■ Not existing in this case are (1) ignorance of the parties who invoke the estoppel or him from whom such parties derive such claim, (2) a representation by word or act by party alleged to be estopped which has misled, and (3) an innocent and detrimental change on part of the party asserting the estoppel in reliance upon the representation.

The appellant-receiver, as a member of the debtor partnership, instituted the proceeding. He was on the pay roll during the entire receivership, and prior to the receivership an active partner, and drew more funds out of the partnership than he placed therein. It was in a large measure for his benefit and protection the proceedings were instituted.

H. A. Bryant, president of the appellant, Parsons Commercial Bank, with knowledge, bought all the certificates. These two parties, Bryant and Coursey, were fully advised of all the proceedings. A representation by word or act by the party sought to be estopped which has misled is not present here, and there is nothing in the record that discloses that the appellants were misled. These parties knew that the Harvester Company and the French Company had no notice when the receiver's certificates were authorized. The judge authorizing the issuance of the certificates has stated that he did not intend by said order to displace any existing lien.

The acquiescence on the part of the Harvester Company and the French Company in the appointment of appellant, a debtor himself, as receiver, and consent to the plan of extension did not constitute a waiver or estoppel as to prior liens. In re Savoia Macaroni Mfg. Co., 2 Cir., 79 F.2d 530; 67 C.J. 302-304.

The machinery and trucks upon which the prior liens existed were becoming depreciated by use, the French Company and the Harvester Company gaining nothing by the continued operation of the business under the receivership.

Contention is made that the property of the French Company never became a part of the assets of the debtor, on account of distinction between a chattel mortgage and a title contract under Kansas decisions. A title contract with condition of sale as to the price, having been duly filed for record in accordance with the statute, under Kansas holding the title of the property remains in the vendor. National Cash Register Co. v. Pfeifer, 149 Kan. 582, 82 P.2d 1032. It is not necessary, however, to determine this question.

The judgment of the lower court is affirmed.